Filed with Classified
Information Security Officer

CISO _Al. Guerrero Randall_

Date _11/18/2016_

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

)
ABD AL RAHIM HUSSEIN AL NASHIRI,   )   **CIVIL ACTION**
)   **(HABEAS CORPUS)**
)
       _Petitioner,_  )
)   No. 08-cv-1207 (RCL)
_v._        )   Misc. No. 08-mc-442 (TFH)
)
BARACK OBAMA, _et al.,_   )
)   _before_
     _Respondents._  )   Judge Royce C. Lamberth
)

**MEMORANDUM OF LAW
IN SUPPORT OF PETITIONER'S
PRESERVATION MOTION**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ iii

Introduction.........................................................................................................................1

Background .........................................................................................................................3

Argument ..........................................................................................................................10

Conclusion ........................................................................................................................19

UNCLASSIFIED//FOR PUBLIC RELEASE

# TABLE OF AUTHORITIES

**Cases**

*Abdah et al. v. Bush*, Case No. 04-cv-1254 (Dkt. No. 155) (D.D.C., Jun. 10, 2005) ..................... 4

*Abdah v. Bush*, Case No. 04-cv-1254 (Dkt. No. 155) (D.D.C., Jun. 10, 2005) ........................... 10

*Abdullah v. Bush*, 534 F.Supp.2d 22 (2008)............................................................................ 11

*ACLU v. DOD*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) ................................................................ 4

*Al Odah v. United States*, 559 F.3d 539 (D.C. Cir. 2009) ....................................................... 11

*Al-Nashiri v. Obama*, 76 F.Supp.3d 218 (D.D.C. 2014)............................................................ 9

*Alsaaei v. Bush*, 2006 WL 2367270 (D.D.C. 2006) ................................................................. 11

*Bakri v. Obama*, 660 F. Supp. 2d 1 (D.D.C. 2009)................................................................... 12

*Bensayah v. Obama*, 610 F.3d 718 (D.C. Cir. 2010) ............................................................... 12

*Bin Attash v. Obama*, 628 F. Supp. 2d 24 (D.D.C. 2009).................................................. 13, 14, 16

*Boumediene v. Bush*, 553 U.S. 723 (2008) ........................................................................ 11, 15

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................................. 13

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ........................................................................... 17

*El-Banna v. Bush*, 2005 WL 1903561 (D.D.C. 2005) ........................................................... 4, 10

*Green v. Georgia*, 442 U.S. 95 (1979).................................................................................... 17

*In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016) ...................................................................... 9

*Lockett v. Ohio*, 438 U.S. 586 (1978) ..................................................................................... 16

*Mousovi v. Obama*, 916 F. Supp. 2d 67 (D.D.C. 2013)............................................................ 15

*Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008).................................................................... 12

*Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (2004) ...................................................... 10

*Rasul v. Bush*, 542 U.S. 466 (2004) ........................................................................................ 3

*Reck v. Pate*, 367 U.S. 433 (1961).......................................................................................... 15

*Tennard v. Dretke*, 542 U.S. 274 (2004)................................................................................. 17

*United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006)............................................. 15

*United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21 (D.D.C. 2004) ........................... 10

*United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007) ..................... 14

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ................................................................... 17

UNCLASSIFIED//FOR PUBLIC RELEASE

**Other Authorities**

Charlie Savage, *U.S. Tells Court that Documents from Torture Investigation Should Remain Secret*, N.Y. TIMES (Dec. 10, 2014) ............................................................................... 6

Dan Eggen & Job Warrick, *CIA Destroyed Videos Showing Interrogations*, WASHINGTON POST, Dec. 7, 2007 ............................................................................................................... 3

Katherine Hawkins, *Background: Status of the Senate Torture Report*, The Constitution Project, May 25, 2016 ............................................................................................................ 5

Letter from Sen. Dianne Feinstein to Pres. Barack Obama (Jan. 16, 2015) .................................. 6

Letter from Sen. Dianne Fienstein to President Barack Obama (Dec. 10, 2014) ........................... 5

Mark Mazzetti & Charlie Savage, *No Criminal Charges Sought Over CIA Tapes*, N.Y. TIMES, Nov. 9, 2010 ........................................................................................................... 4

Matt Apuzzo & Adam Goldman, *Key Omission in Memo to Destroy CIA Terror Tapes*, SEATTLE TIMES, Jul 25, 2010 ................................................................................................. 4

Michael Isikoff, *Senate Report on CIA Torture is One Step Closer to Disappearing*. YAHOO NEWS, May 16, 2016 ............................................................................................... 6

Press release, Sen. Feinstein, Statement on Intel Committees CIA Detention, Interrogation Report (Mar. 11, 2014) .............................................................................................. 4

UNCLASSIFIED//FOR PUBLIC RELEASE

## INTRODUCTION

Petitioner, Abd Al Rahim Hussein Al-Nashiri, respectfully moves this Court to preserve the status quo and formalize Respondents' obligation to preserve and maintain all evidence, documents, and information regarding the torture, mistreatment, confinement, and abuse of terrorism suspects since September 11, 2001, as well as all evidence, documents, and information relating to or referring to Petitioner specifically. Petitioner further asks that this Court specify that these records include, but are not limited to, the full report prepared by the Senate Select Committee on Intelligence ("SSCI"), entitled "Committee Study of the Central Intelligence Agency's Detention and Interrogation Program" ("SSCI Report"), which was transferred to various components of the Executive Branch on December 10, 2014; the Central Intelligence Agency ("CIA") report prepared in response to a draft of the SSCI Report, which was prepared between 2012 and 2014 ("CIA Report"); and all documents referenced in either the SSCI Report or the CIA Report. Finally, Petitioner asks that the SSCI Report, in particular, be submitted to the Court under seal to ensure against its inadvertent or deliberate loss.

Respondents have had the full and fair opportunity to litigate similar motions in numerous habeas cases involving Guantanamo detainees. In all such cases, this Court has granted the order petitioner now seeks. The evidence Petitioner seeks to protect is necessary to protect his ability to assert his rights via habeas corpus and its preservation is not unduly burdensome on the Executive Branch. All of the records that petitioner seeks are in the possession of the Executive Branch, have on various occasions been subject to comparable preservation orders or assurances by the Executive Branch that these records will be preserved pending litigation, and, on information and belief, all of the requested records are already digitized and can be securely held in the      SCIF

An order from this Court is necessary now to avert the significant risk that these records will be destroyed or become unavailable by the time Petitioner is able to pursue relief via habeas corpus. Petitioner is currently charged before military commission proceedings. This Court has ruled that Petitioner's habeas petition must be held in abeyance pending the conclusion of those proceedings, which are unlikely to be resolved for many years. At present, various factors put the evidence Petitioner will need at any future habeas proceedings at risk. The CIA has already destroyed evidence relating to the Petitioner's treatment as well as a copy of the SSCI Report. Sen. Richard Burr, the current Chairman of the SSCI, has also requested that copies within the possession of the Executive Branch be either returned to the SSCI or destroyed. Together, there is a significant risk that records which will be essential to Petitioner's ability to seek relief via habeas corpus will be irreparably lost.

Accordingly, Petitioner asks this Court to enter an order comparable to the orders it has entered in other cases to ensure that Petitioner's right to seek habeas corpus will be meaningful.

UNCLASSIFIED//FOR PUBLIC RELEASE

## BACKGROUND

Petitioner is a Saudi national who was seized by local authorities in Dubai in late 2002

and transferred to the jurisdiction of United States authorities after approximately a month. For

the next four years he was held incommunicado in the so-called "black sites" as part of the CIA's

Rendition Detention and Interrogation ("RDI") Program. During this time, CIA agents subjected

Petitioner to the most extreme forms of torture and abuse in which this country has ever engaged,

including the use of waterboarding and mock executions. This was done over the protests of the

agents themselves, who correctly determined that Petitioner appeared mentally disabled and had

cooperated in sharing all the intelligence information he was capable of providing. The agents'

bureaucratic superiors nevertheless insisted that Petitioner be beaten into a state of "learned

helplessness" to make him "passive and depressed in response to adverse or uncontrollable

events." One of these black sites was Guantanamo, where Petitioner was held until the Supreme

Court granted certiorari in *Rasul v. Bush*, 542 U.S. 466 (2004), when he was taken to other black

sites abroad.

Starting in 2003, district courts around the country issued orders to the Executive Branch

mandating the preservation of government records related to detainee treatment and the black

sites. The United States District Court for the Eastern District of Virginia reportedly issued a

series of orders, under seal, in the criminal case of Zacarias Moussaoui, including one

"order[ing] the CIA in 2003 to turn over tapes of terrorists whose testimony might be relevant to

Moussaoui's defense." Dan Eggen & Job Warrick, *CIA Destroyed Videos Showing

Interrogations*, WASHINGTON POST, Dec. 7, 2007.[1] In 2004, in response to a Freedom of

Information Act ("FOIA") request by the American Civil Liberties Union ("ACLU"), the United

---

[1] http://www.washingtonpost.com/wp-
dyn/content/article/2007/12/06/AR2007120601828_pf.html

UNCLASSIFIED//FOR PUBLIC RELEASE

States District Court for the Southern District of New York ordered the Executive Branch,

including the CIA, to preserve all records relating to the treatment of detainees seized after

September 11, 2001. *ACLU v. DOD*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004). And in the

summer of 2005, this Court entered numerous preservation orders to ensure that the necessary

evidence would be available to adjudicate habeas petitions filed by Guantanamo detainees. *See*

*generally El-Banna v. Bush*, 2005 WL 1903561 (D.D.C. 2005). This included orders to "preserve

and maintain all evidence and information regarding the torture, mistreatment, and abuse of

detainees now at the United States Naval Base at Guantánamo Bay, Cuba." *Abdah et al. v. Bush*,

Case No. 04-cv-1254 (Dkt. No. 155) (D.D.C., Jun. 10, 2005).

Nevertheless, in early November 2005, José Rodriguez, the CIA's Chief of the

Directorate of Operations, destroyed video tapes depicting the torture of various CIA detainees in

the black sites, including of Petitioner being subjected to the suffocation technique known as the

waterboard. Matt Apuzzo & Adam Goldman, *Key Omission in Memo to Destroy CIA Terror*

*Tapes*, SEATTLE TIMES, Jul 25, 2010. This was done against the express instructions of the White

House Counsel and the Director of National Intelligence. Press release, Sen. Feinstein, Statement

on Intel Committees CIA Detention, Interrogation Report (Mar. 11, 2014).[2] It also resulted in a

criminal investigation in the Eastern District of Virginia, which was later dropped for prudential

reasons in 2010. Mark Mazzetti & Charlie Savage, *No Criminal Charges Sought Over CIA Tapes*,

N.Y. TIMES, Nov. 9, 2010.

On March 5, 2009, the Senate Select Committee on Intelligence voted 14-1 to initiate a

comprehensive investigation into the RDI Program, resulting in the review of approximately six

million pages' worth of government documents. The SSCI compiled its conclusions into a 6,963

---

[2] http://1.usa.gov/1GdfNhk

UNCLASSIFIED//FOR PUBLIC RELEASE

page report entitled, "Select Committee on Intelligence's Study of the CIA's Detention and Interrogation Program" ("SSCI Report"). *See generally* Katherine Hawkins, *Background: Status of the Senate Torture Report*, The Constitution Project, May 25, 2016.[3] In December 2012, a draft of this report was transmitted to the CIA, which in turn prepared a report responding to the SSCI's findings and conclusions. ("CIA Report").

In the summer of 2014, the SSCI transmitted the full SSCI Report to the Executive Branch, requesting that its 500-page executive summary be declassified for public release. On December 9, 2014, the SSCI released the declassified executive summary, which described widespread use of torture, including against Petitioner, as well as the CIA's efforts to conceal its conduct to the Congress, the public, the courts, and even the White House. Petitioner and his treatment are featured throughout the executive summary and according to its internal references, Volume III of the full SSCI Report appears to be dedicated to Petitioner's treatment in the RDI Program. SSCI Report, at 66 n.332.

Contemporaneous with the public release of the Executive Summary, the SSCI transmitted a copy of the full report to President Obama, stating "the full report should be made available within the CIA and other components of the executive branch for use as broadly as appropriate[.] … I hope you will encourage use of the full report in the future development of CIA training programs, as well as future guidelines and procedures for all executive branch employees, as you see fit." Letter from Sen. Fienstein to Pres. Obama (Dec. 10, 2014).

In January 2015, Sen. Feinstein was replaced as chairman of the SSCI by Sen. Richard Burr. Sen. Burr, upon taking his seat, wrote a letter to President Obama asking that "all copies of the full and final report in the possession of the executive branch be returned immediately to the

---

[3] http://www.constitutionproject.org/wp-content/uploads/2016/05/Senate-Torture-Report-Backgrounder-5-25-16.pdf

UNCLASSIFIED//FOR PUBLIC RELEASE

committee." Sen. Feinstein wrote her own letter stating that she did not support the request for

the report's return and stated that the report should remain "within appropriate executive branch

systems of record, with access to appropriately cleared individuals with a need to know." Letter

from Sen. Dianne Feinstein to Pres. Barack Obama (Jan. 16, 2015).

Beginning in 2013, the ACLU initiated a series of FOIA requests for the full SSCI Report,

the CIA Report, as well as the underlying documents, which have been the subject of litigation in

this Circuit as well as the Second Circuit. *ACLU v. CIA*, Case No. 13-01870 (D.D.C., filed Nov.

26, 2013); *ACLU v. DOD*, Case No. 15-09317 (S.D.N.Y., filed Nov. 25, 2015). In the course of

this litigation, the Department of Justice disclosed that both the CIA and the Department of

Defense had reviewed the SSCI Report. There are also news reports that the Department of

Justice reviewed the full report to assess whether criminal charges against the RDI Program's

participants were warranted. *See* Charlie Savage, *U.S. Tells Court that Documents from Torture*

*Investigation Should Remain Secret*, N.Y. TIMES, Dec. 10, 2014.

Following Sen. Burr's request that copies of the SSCI Report be returned, the ACLU

filed for a preliminary injunction in this Court, seeking to prevent the Executive Branch from

destroying or otherwise relinquishing the SSCI Report. On February 6, 2015, the Department of

Justice voluntarily agreed that the Executive Branch agencies in possession of the SSCI Report

"will preserve the status quo regarding the Full Report absent either leave of court or resolution

of this litigation in the government's favor." *ACLU v. CIA*, Case No. 13-cv-01870 (Dkt. No. 42)

(D.D.C., Feb. 6, 2015). However, on May 16, 2016, it was revealed that the CIA's Inspector

General's Office had destroyed its working copy of the SSCI Report. Michael Isikoff, *Senate*

*Report on CIA Torture is One Step Closer to Disappearing*. YAHOO NEWS, May 16, 2016 ("The

CIA inspector general's office — the spy agency's internal watchdog — has acknowledged it

6

'mistakenly' destroyed its only copy of a mammoth Senate torture report at the same time

lawyers for the Justice Department were assuring a federal judge that copies of the document

were being preserved, Yahoo News has learned.").[4] While this was secretly disclosed to the

SSCI, the destruction of this copy was not approved or otherwise reported to this Court. *Id.*

On May 20, 2015, this Court dismissed the ACLU's FOIA suit on the ground that the

SSCI Report remained a congressional document that was consequently exempt from FOIA

disclosure. The ACLU appealed and on May 13, 2016, the D.C. Circuit affirmed. On November

10, 2016, the ACLU petitioned the Supreme Court for a writ of certiorari on the question of the

SSCI Report's status under FOIA, which remains pending.

In September 2006, Petitioner was brought back to Guantanamo to be held as a so-called

"enemy combatant." Over two years later, on December 19, 2008, the Department of Defense

issued orders to create a military commission to try Petitioner for offenses largely drawn from a

criminal indictment that has been pending in the Southern District of New York since 2003.

Three years later, the Department of Defense issued new orders creating a second military

commission to try Petitioner and authorizing it to impose the death penalty. This military

commission remains in its pre-trial phase and is not expected to begin its trial phase until, at

least, the summer of 2018.

As part of these pre-trial proceedings, Petitioner moved to have a copy of the SSCI

Report provided in discovery. AE205.[5] Following Sen. Burr's efforts to have the Executive

Branch relinquish its copies of the SSCI Report, Petitioner also filed a motion in his military

---

[4] https://www.yahoo.com/news/senate-report-on-cia-torture-1429636113023030.html

[5] All declassified military commission filings are available on a government website www.mc.mil/CASES/MilitaryCommissions.aspx. They are organized by Appellate Exhibit ("AE") number, which can be searched. Petitioner therefore identifies military commission documents on the basis of their AE number.

UNCLASSIFIED//FOR PUBLIC RELEASE

commission, requesting that a copy of the SSCI Report be filed under seal in order to prevent its becoming unavailable as evidence in his capital trial. AE205N. Prosecutors in Guantanamo argued against this relief on the ground that the SSCI Report "is not within the government's possession, custody, or control[.]" AE205N, at 4. On March 31, 2015, the military commission denied the defense's motion. AE205T. Nevertheless, the military commission ordered the Prosecution to review the SSCI Report for discoverable information and provide notice to the commission of any information provided to the defense. AE205U.[6]

On July 15, 2008, Petitioner filed a writ of habeas corpus in this Court challenging various aspects of his detention. *Al-Nashiri v. Obama, et al.*, Case No. 08-cv-1207 (D.D.C., filed Jul. 15, 2008). Petitioner's prior counsel moved for the issuance of a Preservation Order like that issued in other habeas causes to prevent the government from destroying material evidence relating to his conditions of confinement both at Guantanamo as well as during his time in the black sites. *Al-Nashiri v. Obama, et al.*, Case No. 08-cv-1207 (Dkt. No. 86) (D.D.C., filed Jan. 16, 2009). One of Petitioner's stated concerns was the destruction of evidence relating to Petitioner by Jose Rodriguez in 2005. The government opposed this order principally because the "Court should have no significant concerns about the continuing existence and maintenance of the integrity of the evidence in question in the absence of a preservation order because the Government has imposed on itself a duty to preserve such records." *Al-Nashiri v. Obama, et al.*, Case No. 08-cv-1207 (Dkt. No. 93), at 3 (D.D.C., filed Jan. 28, 2009). Petitioner's current counsel have scoured the docket and cannot find any order on Petitioner's motion.

---

[6] To put this litigation in context, the prosecutors in Guantanamo take the view that they are not obligated to provide government records to the defense, but only the "information" that those records contain. In practice, this means that the prosecution often provides general synopses of classified government records in lieu of the records themselves. The defense contends that the statute and governing rules require the production of documents themselves. This issue remains under litigation in the military commission.

UNCLASSIFIED//FOR PUBLIC RELEASE

On April 21, 2014, Petitioner's current counsel sought leave to file a supplemental petition for a writ of habeas corpus challenging the legality of his trial by military commission and sought a preliminary injunction. *Al-Nashiri v. Obama, et al.*, Case No. 08-cv-1207 (Dkt. Nos. 216-219) (D.D.C., filed Apr. 21, 2014). This Court granted leave to file a supplemental petition, but denied Petitioner's motion for a preliminary injunction, ruling that it would abstain from such challenges until the military commission proceedings were complete. *Al-Nashiri v. Obama*, 76 F.Supp.3d 218 (D.D.C. 2014). Petitioner timely appealed and on August 30, 2016, a divided panel of the D.C. Circuit affirmed the Court's decision to abstain, but noted that if Petitioner sought to "challenge his treatment while in custody, nothing in our opinion forecloses him from challenging those conditions by filing a habeas petition in district court." *In re Al-Nashiri*, 835 F.3d 110, 131 (D.C. Cir. 2016). Petitioner intends to file a petition for a writ of certiorari in the Supreme Court on or before his deadline of January 14, 2016, but files the instant motion to preserve the *status quo*.

9

## ARGUMENT

1.      Petitioner asks that the *status quo* be formalized in an order from this Court to avert the significant risk that relevant and necessary evidence will be destroyed or otherwise made unavailable before he has the opportunity to challenge his detention, conditions of confinement, and other claims via habeas corpus. The evidence Petitioner seeks to protect will be necessary to protect his rights and its preservation will not be unduly burdensome on the Executive Branch. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 n.8 (2004); *see also United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 23 (D.D.C. 2004). While many of the records Petitioner seeks to protect are classified, most if not all are already digitized and may be safely secured, as all other records in this case has been, in the            SCIF operated by the Court Security Officer pursuant to the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information, Case Nos. 08-mc-442-TFH (Dkt. Nos. 1481 & 1496) & 08-cv-01207-RJR (Dkt. Nos. 79 & 80) (D.D.C. 9 January 2009).

All Petitioner seeks is what has been granted in other cases involving similarly situated Guantanamo detainees. This Court has issued appropriate Preservation Orders because "[d]ocuments evidencing treatment of detainees-whether statements of official policy, cumulative evidence of specific practices, or something else-may be probative of the treatment of petitioners or may lead to other probative evidence." *El-Banna v. Bush*, 2005 WL 1903561 (D.D.C. 2005). In *Abdah v. Bush*, Case No. 04-cv-1254 (Dkt. No. 155) (D.D.C., Jun. 10, 2005), this Court ordered the government to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the United States Naval Base at Guantánamo Bay, Cuba." This Court has consistently ordered Respondents to "preserve and

maintain all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, regarding the detained petitioner in this case." *Alsaaei v. Bush*, 2006 WL 2367270 (D.D.C. 2006). And after the destruction of evidence by Jose Rodriguez came to light, this Court has also ordered the government to report on what, if any, evidence had been destroyed as it related to particular petitioners. *Abdullah v. Bush*, 534 F.Supp.2d 22, 25 (2008). Indeed, the government has voluntarily agreed to preserve the SSCI Report, the CIA Report, and underlying source documents during the pendency of a FOIA case that is likely to be resolved within the following year. *ACLU v. CIA*, Case No. 13-cv-01870 (Dkt. No. 42) (D.D.C., Feb. 6, 2015).

  2. Preservation of these records in this case is necessary for at least three reasons. *First*, the D.C. Circuit has already held that classified material of the kind Petitioner seeks to preserve is discoverable in Guantanamo habeas litigation. For example, in *Al Odah v. United States*, 559 F.3d 539 (D.C. Cir. 2009), the Circuit held that a district court can compel the disclosure of relevant and material information that is in the hands of the government, even when that information is classified. *Id.* at 544. To that end, the Court found that a classified document containing the names of witnesses who could provide helpful information could be relevant and material, *id.* at 545, and remanded the case to the district court for findings on the issue.

  The district courts' duty to conduct a meaningful review of a Guantanamo detainee's detention as well as of the government's power to detain is rooted in the Supreme Court's decision in *Boumediene v. Bush*, 553 U.S. 723 (2008). There, the Supreme Court held that in order for the writ of habeas corpus to function as an effective check on the government's ability to detain inmates in Guantanamo, the habeas court must have:

> some authority to assess the sufficiency of the Government's evidence against the detainee. It also must have the authority to admit and consider relevant

11

UNCLASSIFIED//FOR PUBLIC RELEASE

exculpatory evidence that was not introduced during the earlier proceeding. Federal habeas petitioners long have had the means to supplement the record on review, *even in the post-conviction habeas setting*. Here that opportunity is constitutionally required.

*Id.* at 786 (internal citation omitted) (emphasis added); *see also Bensayah v. Obama*, 610 F.3d 718, 725, 727 (D.C. Cir. 2010) (district court must perform its own evaluation of evidence in detainee habeas case and determine that sufficient evidence exists to find that the detainee was part of al Qaeda; it may not simply rely on the government's say-so as well as its claimed authority to detain people under the Authorization for the Use of Military Force); *cf. Parhat v. Gates*, 532 F.3d 834, 847 (D.C. Cir. 2008).

Moreover, the right to review classified evidence extends not just to the habeas court but also, by necessity, to the detainee's counsel. Thus, in *Bakri v. Obama*, 660 F. Supp. 2d 1 (D.D.C. 2009), this Court held that the habeas petitioner's counsel had to be allowed access to *unredacted* classified information in order to do his job and properly represent his client, "[c]ounsel cannot realistically be expected to assist a court in conducting meaningful review if he does not have access to material facts." *Id.* at 2.

Regardless of whether Petitioner is convicted or acquitted of the capital charges he now faces in the military commission, he and his counsel must be allowed broad access to the evidence that is, has been, and will be used to justify his continued detention once the abatement in this case is lifted or which may undermine the government's case against him. The SSCI Report, in particular, evaluates intelligence about Petitioner's role in or knowledge about al Qaeda, which must be preserved for use at his habeas hearing. And to the extent the complete and unredacted SSCI Report and CIA Report goes into detail about these issues, and offers expert opinions respecting the facts available to the government, those details must be preserved

12

for the good not only of Petitioner and his counsel, but also the good of the courts charged with reviewing his detention.[7]

*Second*, it is necessary for this Court to order preservation of records which will bear on the process that led to any determination of Petitioner's guilt. For example, on information and belief, Petitioner's counsel proffers that they will be able to show that Petitioner denied involvement in acts of terrorism prior to being tortured, information which is exculpatory and therefore highly relevant to a post-conviction habeas petition. *See Bin Attash v. Obama*, 628 F. Supp. 2d 24, 32-33 (D.D.C. 2009). Likewise, evidence showing that a government's witnesses at the military commission trial were biased or unreliable is also exculpatory and can lead to a grant of habeas, *id.* at 34-35. One of the principal findings of the SSCI Report was the extraordinary extent to which the CIA actively misled its overseers across the branches of government about the efficacy of torture and the relatively culpability of the individuals it tortured. The documents Petitioner wishes to preserve are therefore likely to cast doubt on the reliability, accuracy, or impartiality of any government interrogators, doctors, or other witnesses.

This Court will also have to evaluate the prosecution's compliance with its discovery obligations and the true scope of the evidence that may ultimately be used to sustain a capital conviction. *Brady v. Maryland*, 373 U.S. 83, 88 (1963). The Rules for Military Commissions

---

[7] In a footnote, the district court in *Bakri v. Obama* notes that the classified information at issue in that case involved "the number of Bagram detainees, the number of those detainees who are Afghan citizens, and how many were apprehended outside Afghanistan." Taking issue with the classification of "*facts*," and with the government's refusal to allow security-cleared counsel access to such facts, the court in a footnote "advised" the Executive branch "to review whether this basic factual information should continue to be classified at this time." *Id.* at 2 n.1. In a document as vast as the complete and unredacted SSCI report, there is every chance that the same kind of overclassification has likewise occurred in that document. Preservation of the report is therefore warranted in order to retain not only the RDI information that is the subject of the report, but the ancillary factual details contained within that may well have been overclassified, and that are necessary for a full and fair defense of Petitioner.

UNCLASSIFIED//FOR PUBLIC RELEASE

state the defense "is entitled to the production of evidence which is relevant, necessary and noncumulative." R.M.C. 703(f)(1). The government must produce information "material to the preparation of the defense" where the information is "within the possession, custody, or control of the Government." R.M.C. 701(c). The government must produce all exculpatory evidence that reasonably tends to (a) negate the guilt of the accused, (b) reduce the degree of guilt of the accused, or (c) reduce the punishment. R.M.C. 701(e)(1). The "Government" is the United States. There is no distinction between the executive and legislative branches, offices, or work-space. All the records Petitioner seeks to preserve meet this *prima facie* standard of discoverability because they are "books, papers, documents" that are "within the possession, custody, or control of the Government" and its existence and location are "known to trial counsel" within the meaning of the rules.

This is equally true of the SSCI Report. In the habeas context, "reasonably available evidence" is defined as "evidence contained in any information reviewed by attorneys preparing factual returns for all detainees; it is not limited to evidence discovered by the attorneys preparing factual returns for the petitioner." *Bin Attash*, 628 F. Supp. 2d at 30. And assuming the Supreme Court ultimately determines that the SSCI Report remains a congressional record, exempt from FOIA disclosure, it remains subject to judicial process as evidence in a criminal trial. "[C]ongressional offices are subject to the operation of the Fourth Amendment and thus subject to a search pursuant to a search warrant issued by the federal district court." *United States v. Rayburn House Office Building*, 497 F.3d 654, 660 (D.C. Cir. 2007). While the military commission has permitted the prosecution to withhold the SSCI Report, it has already ruled that it contains discoverable evidence. AE 206U at 3 ("It is clear to the Commission the SSCI Report contains discoverable information."). Prosecutors in Guantanamo have personally reviewed the

UNCLASSIFIED//FOR PUBLIC RELEASE

SSCI Report and have promised to notify the commission of information within the SSCI Report that is discoverable.[8]

Ultimately this Court, in post-trial habeas, will have to review the legality of the military commission's decision respecting the prosecution's discovery obligations as well as the prosecution's candor in affording Petitioner's military counsel all the evidence to which he was entitled by law.[9] Indeed, "[t]he primacy of the Court's independent review of the evidence is the defining feature of these proceedings." *Mousovi v. Obama*, 916 F. Supp. 2d 67, 74 (D.D.C. 2013). When Congress sought to foreclose Guantanamo habeas proceedings based upon the determinations of the Combatant Status Review Tribunals, it sought to bolster those conclusions by giving the D.C. Circuit appellate jurisdiction over those conclusions under the Detainee Treatment Act. The Supreme Court held, however, that this appellate review could not substitute for habeas because the D.C. Circuit lacked the authority to go behind the record presented in order "to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene*, 553 U.S. at 783.

If nothing else, the details of a defendant's coerced confessions have led to habeas relief for convicted murderers, even decades after the actual crime had been committed. *Reck v. Pate*, 367 U.S. 433 (1961). In *Reck*, the Court found that the petitioner had suffered "deliberate

---

[8] The Senate Select Committee of Intelligence permitted the Office of the Chief Prosecutor of Military Commissions to conduct a full review of the complete SSCI Report, which lasted from approximately 18 February 2015 until 9 September 2016. AE 120VVVVV (Government's Forty-Seventh Notice Relating to its Efforts to Comply With the Commission's 24 June 2014 Discovery Order (AE 120AA)). Because the prosecution actually reviewed the documents, the documents are within the government's possession, custody, or control for criminal discovery purposes. *See United States v. Finnerty*, 411 F. Supp. 2d 428, 432-33 (S.D.N.Y. 2006).

[9] To date, the defense has not received any evidence directly from the SSCI Report. In April 2015, the judge ordered the prosecution to "provide notice to the Commission as to all newly located and discoverable material provided to the Defense as result of its review of the SSCI Report. This notice will be filed under the AE 206 series and not pursuant to paragraph 1.a. of AE 045H." AE 206U at 4. No notice or evidence has been filed under the AE 206 series.

UNCLASSIFIED//FOR PUBLIC RELEASE

physical abuse," which tainted his later statements to investigators. *Id.* at 440, 444. To have been

convicted based on such statements, the Court concluded, was a violation of due process

requiring petitioner's release from custody. *See also Bin Attash*, 628 F. Supp. 2d at 39

(abuse/torture can render statements involuntary or coerced, and so evidence of that abuse is

exculpatory and must be turned over).

Here, as even the executive summary of the SSCI Report demonstrates, the government

admits to subjecting Petitioner to "deliberate physical abuse." The full details of that abuse are

set out in the complete and unredacted version of the SSCI Report, the CIA Report, and the other

government records Petitioner seeks to preserve. Those records will show "coercive

circumstances" that pervade the entirety of his captivity at the hands of the CIA. Indeed, much as

in *Reck*, there is every indication that the evidence Petitioner seeks to preserve will demonstrate

how a confession or confessions were tortured out of Petitioner, tainting the very evidence the

Prosecution intends to rely upon to secure a capital conviction against him. These records must

be preserved in order for this Court to evaluate the lawfulness of any conviction.

*Third*, Petitioner is a capital defendant. The complete details of his torture at the hands of

the government as well as the SSCI's conclusions respecting the consequences that flow from

that torture are mitigating evidence. Indeed, due to the importance of mitigating evidence in

death penalty cases – and the self-evident requirement that the government not destroy such

evidence – this basis alone is sufficient to justify the issuance of the requested preservation order.

The Eighth Amendment has long required that capital sentencers have extremely broad

access to facts in mitigation, due to the requirement that all death sentences be individually

tailored to the single individual in front of the jury along with his own individual background and

circumstances. *Lockett v. Ohio*, 438 U.S. 586, 604-605 (1978) (capital sentencer may "not be

UNCLASSIFIED//FOR PUBLIC RELEASE

precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death"); *see also Tennard v. Dretke*, 542 U.S. 274, 284-285 (2004) (rejecting view that evidence needs to have some nexus to the crime to be mitigating; "[r]elevant mitigating evidence is evidence which tends logically to prove or disprove some fact or circumstance which a factfinder could reasonably deem to have mitigating value"); *Green v. Georgia*, 442 U.S. 95, 97 (1979) (state hearsay rule could not be invoked to bar relevant mitigating evidence). Similarly, the Federal Death Penalty Act provides that jurors are to consider any "[o]ther factors in the defendant's background, record, or character or any other circumstance of the office that mitigate against imposition of the death sentence." 10 U.S.C. § 3592(a)(8). Indeed, not only must death penalty jurors have *access* to this information, they must also give it meaningful consideration, and may not simply dismiss any or all facts in mitigation out of hand. *Eddings v. Oklahoma*, 455 U.S. 104, 114-115 (1982) ("The sentencer . . . may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration").

Given the Eighth Amendment's heightened "need for reliability in the determination that death is the appropriate punishment in a specific case," *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion), any death sentence imposed on Petitioner must be based upon all of the actual facts, and any jury considering death must be able to fully consider those facts. All Petitioner seeks from this Court is an order to ensure that he will have the ability to demonstrate those facts when habeas review is available and necessary.

3.    Finally, it is necessary and appropriate for Respondents to submit a copy of the SSCI Report, in particular, to this Court under seal for safe storage in the          SCIF.

UNCLASSIFIED//FOR PUBLIC RELEASE

Ordinarily, an order from this Court would be sufficient to ensure against the destruction of evidence in the possession of the government. The SSCI Report, however, is an exception that, based on the record in this case so far, warrants special treatment.

There is already a pattern of evidence destruction in this case. Despite court orders from at least three different federal districts, the CIA knowingly and willfully destroyed records of Petitioner's torture in November 2005. Indeed, this was done against the direct instructions of White House and CIA's own lawyers. Indeed, as noted above, at least one copy of the SSCI Report has already been destroyed by the CIA despite the Department of Justice's assurances to this Court that the status quo would be preserved in February 2005.

While unusual, specific steps to place a copy of the SSCI Report under the Court's control are needed because the very existence of the SSCI Report has become a point of political controversy and, as discussed above, efforts to destroy it have been underway for nearly two years. Filing a copy under seal in the ████████ SCIF will ensure that the evidence available to this Court is not subject to the vicissitudes of politics and the misguided "initiative" of staffers on the SSCI and in the Executive Branch, who take matters into their own hands.

18

UNCLASSIFIED//FOR PUBLIC RELEASE

## CONCLUSION

For the foregoing reasons, Petitioner asks this Court to enter the requested preservation

order during the pendency of this case.


Respectfully submitted,

Dated: November 18, 2016

/s/      Michel Paradis
Michel Paradis (D.C. Bar #499690)
U.S. Department of Defense
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, DC 20301
1.703.696.9490 x115
michel.paradis@osd.mil

Nancy Hollander (D.C. Bar #TX0061)
Freedman Boyd Hollander Goldberg Urias & Ward P.A.
20 First Plaza
Albuquerque, NM 87102

Richard Kammen (*pro hac vice* application pending)
Kammen & Moudy
135 N. Pennsylvania St., Suite 1175
Indianapolis, IN 46204

*Counsel for Petitioner*

UNCLASSIFIED//FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I certify that on November 18, 2016, I caused the foregoing to be served on Respondent's

counsel by delivering four copies to the Court Security Officer pursuant to the Amended

Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information

and Procedures for Counsel Access to Detainees at the United States Naval Station in

Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented

Information, Case Nos. 08-mc-442-TFH (Dkt. Nos. 1481 & 1496) & 08-cv-01207-RJR (Dkt.

Nos. 79 & 80) (D.D.C. 9 January 2009).


Dated: November 18, 2016                Respectfully submitted,

                                        /s/     Michel Paradis
                                        Michel Paradis (D.C. Bar #499690)
                                        U.S. Department of Defense
                                        Military Commissions Defense Organization
                                        1620 Defense Pentagon
                                        Washington, DC 20301
                                        1.703.696.9490 x115
                                        michel.paradis@osd.mil

                                        *Counsel for Petitioner*

UNCLASSIFIED//FOR PUBLIC RELEASE

Filed with Classified
Information Security Officer

CISO _DMGuerreroRandall_

Date _11/18/2016_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABD AL RAHIM HUSSEIN AL NASHIRI, | **CIVIL ACTION** |
| | **(HABEAS CORPUS)** |
| *Petitioner*, | |
| | No. 08-cv-1207 (RCL) |
| *v.* | Misc. No. 08-mc-442 (TFH) |
| BARACK OBAMA, *et al.*, | |
| | *before* |
| *Respondents.* | Judge Royce C. Lamberth |

## MOTION FOR A PRESERVATION ORDER

COMES NOW, Abd Al-Rahim Hussein Al-Nashiri, pursuant to this Court's authority to issue orders under 28 U.S.C. § 1651 in aid of its fact-finding obligations in habeas corpus proceedings, to preserve the *status quo* by entering a preservation order under which Respondents preserve documents relevant and necessary to the full and fair litigation of Petitioner's habeas corpus case.

In support of this motion, Petitioner relies upon the attached memorandum of law. A proposed order is attached.

1

Respectfully submitted,

Dated: November 18, 2016

/s/     Michel Paradis
Michel Paradis (D.C. Bar #499690)
U.S. Department of Defense
Military Commissions Defense Organization
1620 Defense Pentagon
Washington, DC 20301
1.703.696.9490 x115
michel.paradis@osd.mil

Nancy Hollander (D.C. Bar #TX0061)
Freedman Boyd Hollander Goldberg Urias & Ward P.A.
20 First Plaza
Albuquerque, NM 87102

Richard Kammen (*pro hac vice* application pending)
Kammen & Moudy
135 N. Pennsylvania St., Suite 1175
Indianapolis, IN 46204

*Counsel for Petitioner*

UNCLASSIFIED//FOR PUBLIC RELEASE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ABD AL RAHIM HUSSEIN AL NASHIRI, )
)
                     *Petitioner,* )
)
        *v.* )
)
BARACK OBAMA, *et al.*, )
)
                  *Respondents.* )
)

**CIVIL ACTION**
**(HABEAS CORPUS)**

No. 08-cv-1207 (RCL)
Misc. No. 08-mc-442 (TFH)

*before*
Judge Royce C. Lamberth

## ORDER

It is hereby ORDERED that Petitioner's motion for a record preservation order is GRANTED. Respondents shall preserve and maintain all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, relating to the torture, mistreatment, and/or abuse of detainees held in the custody of the Executive Branch since September 11, 2001 as well as all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, relating to the Petitioner in this case. This includes, but is not limited to:

1. Senate Select Committee on Intelligence, "Committee Study of the Central Intelligence Agency's Detention and Interrogation Program" (2014)

2. Central Intelligence Agency Report prepared between 2012 and 2014 in response to the SSCI Report; and

3. All documents referenced or otherwise relied upon in the above mentioned reports.

It is FURTHER ORDERED that an electronic or paper copy of the Senate Select

Committee on Intelligence, "Committee Study of the Central Intelligence Agency's Detention

and Interrogation Program" (2014) be deposited with the Court Security Officer for secure

storage under the terms of Amended Protective Order for Habeas Cases Involving Top

Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at

the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top

Secret/Sensitive Compartmented Information, Case Nos. 08-mc-442-TFH (Dkt. Nos. 1481 &

1496) & 08-cv-01207-RJR (Dkt. Nos. 79 & 80) (D.D.C. 9 January 2009). The Court Security

Officer shall safeguard this report pending further order by the Court.


Dated:

                                     Judge Royce C. Lamberth
                                     United States District Judge

UNCLASSIFIED//FOR PUBLIC RELEASE

## CERTIFICATE OF SERVICE

I certify that on November 18, 2016, I caused the foregoing to be served on Respondent's

counsel by delivering four copies to the Court Security Officer pursuant to the Amended

Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information

and Procedures for Counsel Access to Detainees at the United States Naval Station in

Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented

Information, Case Nos. 08-MC-442-TFH (Dkt. Nos. 1481 and 1496) & 08-cv-01207-RJR (Dkt.

Nos. 79 & 80) (D.D.C. 9 January 2009).


Dated: November 18, 2016          Respectfully submitted,

                          /s/     Michel Paradis
                          Michel Paradis (D.C. Bar #499690)
                          U.S. Department of Defense
                          Military Commissions Defense Organization
                          1620 Defense Pentagon
                          Washington, DC 20301
                          1.703.696.9490 x115
                          michel.paradis@osd.mil

                          *Counsel for Petitioner*

UNCLASSIFIED//FOR PUBLIC RELEASE