## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____

ABD AL-RAHIM HUSSAIN                    )
   MOHAMMED AL-NASHIRI,             )
                                      )
                 Petitioner,      )
                                        )
                        v.            )   Civil Action 08-cv-1207 (RCL)
                                        )
BARACK OBAMA, et al.,                   )
                                        )
                 Respondents.     )
_____ )

### RESPONDENTS' MOTION FOR PARTIAL RECONSIDERATION
### AND CLARIFICATION OR, IN THE ALTERNATIVE, FOR A STAY

On December 28, 2016, the Court granted Petitioner's Motion for a Preservation Order (see Notice of Mot. for Preservation Order (Nov. 22, 2016) (ECF No. 260). See Order (ECF No. 268) ("the Order"). In doing so, the Court adopted both Petitioner's proposed order and, as the rationale for its Order, "the reasons stated in Petitioner's reply [brief]." See Order at 1. The government respectfully seeks limited reconsideration of three aspects of the Order. As to the first two, the government asks the Court to reconsider the requirements (1) that the government preserve a copy of the Senate Select Committee on Intelligence's "Committee Study of the Central Intelligence Agency's Detention and Interrogation Program" (2014) ("the SSCI Report" or "the Report"), Order at 1, and (2) that the government deposit a copy of that report with the Court Information Security Officer ("CISO") for storage, id. at 2. Reconsideration is appropriate primarily because intervening facts have rendered these provisions unnecessary. As explained below, a copy of the SSCI Report is already being preserved in the Executive Branch under the Presidential Records Act, 44 U.S.C. §§ 2201-2209, and documents underlying the Report have

been and continue to be preserved under a 2007 preservation directive issued by the Director of

the CIA.  Further, no copy of the SSCI Report held by the CIA has been destroyed, nor has any

improper destruction of evidence by the CIA occurred since the issuance of the 2007

preservation directive.   And importantly, the two challenged provisions of the Order also

contravene policy concerns, implicating separation of powers, that were recently emphasized by

the Court of Appeals in a decision concerning an effort to compel disclosure of the Report.  See

ACLU v. CIA, 823 F.3d, 655, 665-68 (D.C. Cir. 2016), petition for cert. filed, No. 16-629 (U.S.

Nov. 9, 2016).  In particular, provisions such as these threaten to disrupt the information flow

between the political branches necessary for proper oversight of Executive Branch agencies by

Congress.

  In seeking reconsideration of these two aspects of the Order, the government emphasizes

that the relief it seeks is limited to that concerning the Report itself.  The government does not

seek reconsideration of the Court's directives to preserve the CIA's response to the SSCI Report,

see Order at 1, ¶ 2, or of the documents underlying that response or the Report, see id. at 1, ¶ 3,

which are already subject to the CIA preservation directive.

  Respondents, however, also seek clarification and, if necessary, reconsideration, as to the

scope of another part of the Order.  The Order requires the government to preserve evidence

relating to any "detainees held in the custody of the Executive Branch since September 11,

2001."  Order at 1.  Interpreted literally, this mandate could include, among other things,

evidence related to convicted criminals held by the Bureau of Prisons, criminal defendants

detained pending federal trial, or even immigration-related detainees.  The government

respectfully requests that the Court reconsider this portion of the Order as unnecessary, or, at a

minimum, clarify that the Order refers to only detainees held at Guantanamo Bay under the

authority of the Authorization for Use of Military Force, Pub. Law 107-40, 115 Stat.224 (2001) ("AUMF").

In the alternative, should the Court decline to reconsider or to clarify the Order as requested, in whole or in part, the government respectfully seeks a stay to permit it to consider whether to seek appellate review of the Order, and if an appeal is authorized, a stay pending appellate review.  Additionally, the government respectfully requests a stay of these provisions pending the decision of the Court on this Motion for Reconsideration.[1]

## ARGUMENT

## I.  Reconsideration of the SSCI Report Preservation Provisions Is Appropriate

Though disfavored, district courts may grant reconsideration "as justice requires." Capitol Sprinkler Insp., Inc. v. Guest Servs., Inc., 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotation omitted).  Reconsideration is appropriate, for example, if "the Court has 'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court."  Singh v. George Washington Univ., 383 F. Supp.2d 99, 101 (D.D.C. 2005) (quoting Cobell v. Norton, 224 F.R.D. 266, 277 (D.D.C. 2004) (internal citation omitted) (alteration in original)).

Here, reconsideration is warranted.  Two intervening facts and an apparent misapprehension of the relevance of the Report reflected in Petitioner's Reply manifest the need to vacate the twin preservation mandates concerning the SSCI Report—(1) that the Executive

---

[1] Pursuant to Local Civil Rule 7(m), undersigned counsel consulted with counsel for Petitioner and was informed that Petitioner will oppose this motion.

Branch preserve a copy of the SSCI Report that were provided to it by the SSCI Chair and, more importantly, (2) that it tender a copy to the CISO. Reconsideration is even more appropriate in light of the serious policy concerns discussed in the <u>ACLU v. CIA</u> decision that highlight the undue burdens associated with the mandates contained in the Order.[2]

---

[2] The SSCI Report resulted from a comprehensive review of the CIA's former detention and interrogation program initiated by the SSCI in 2009 as part of its oversight of the intelligence community. <u>ACLU v. CIA</u>, 823 F.3d at 659. The CIA and the Senate Committee negotiated a special arrangement, memorialized in a June 2009 letter, in which Senate Committee members and staff would have access to relevant CIA documents in a secure electronic reading room at a CIA facility and would prepare and store their work product on a segregated network drive. <u>Id</u>. at 659.

The letter specified that the Senate Committee's work product stored on the network drive would remain "congressional records" whose disposition would be controlled exclusively by the Committee, not by the CIA. Specifically, the letter specified that documents generated by the Committee:

> are the property of the Committee and will be kept at the Reading Room solely for secure safekeeping and ease of reference. These documents remain congressional records in their entirety and disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee. As such, these records are not CIA records under the Freedom of Information Act or any other law . . . . If the CIA receives any request or demand for access to these records from outside the CIA under the Freedom of Information Act or any other authority, the CIA will immediately notify the Committee and will respond to the request or demand based upon the understanding that these are congressional, not CIA, records.

823 F.3d at 659–60 (quoting Letter from Dianne Feinstein, Chairman, Senate Select Comm. on Intelligence, and Christopher S. Bond, Vice Chairman, Senate Select Comm. on Intelligence, to Leon Panetta, Director, CIA ¶ 6 (June 2, 2009)).

The Senate Committee completed its report in December 2014. The full report contains 6,963 classified pages. 823 F.3d at 661. The then-chair of the Senate Committee sent copies of the full report to the President, the CIA, and several other agencies. An accompanying letter indicated the oversight function of the report process, stating:

> [T]he full report should be made available within the CIA and other components of the Executive Branch for use as broadly as appropriate to help make sure that this experience is never repeated. To help achieve that result, I hope you will encourage use of the full report in the future development of CIA training

The status of the SSCI Report was recently considered by the Court of Appeals in <u>ACLU v. CIA</u>, a case concerning a Freedom of Information Act request seeking disclosure of copies of the SSCI Report in the possession of the CIA and three other agencies. 823 F.3d at 659. The Court of Appeals held that it was clear from the memorialized understanding between the Committee and the CIA, <u>supra</u> n.2, that the Committee intended to retain control over dissemination of the full Report.  Accordingly, the Court held that the Report was a Congressional document rather than an agency document subject to disclosure under FOIA.  <u>Id.</u> at 664–68.

In so holding, the Court of Appeals expressly noted that important policy considerations strongly counsel respect for Congress's clearly expressed intent to control documents that it shares with the Executive Branch, a respect rooted in the need to avoid inadvertently chilling the information exchange vital to Congress's oversight functions with respect to Executive Branch agencies.  <u>See</u> <u>id.</u> at 662-63 ("Congress exercises oversight authority over the various federal agencies, and thus, has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in according with Congress' originating intent.").[3]

---

programs, as well as future guidelines and procedures for all Executive Branch employees, as you see fit.

<u>Id.</u> at 660–61 (quoting Letter from Dianne Feinstein, Chairman, Senate Select Comm. on Intelligence, to President Barack Obama (Dec. 10, 2014)).

In January 2015, however, Senator Richard Burr, the new chair of the Senate Committee, sent a letter to the President requesting that "all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee." <u>Id.</u> at 661 (quoting Letter from Richard Burr, Chairman, Senate Select Comm. on Intelligence, to President Barack Obama (Jan. 14, 2015)).

[3]  Previously, the Court of Appeals has similarly explained that these "special policy considerations" are rooted in "Congress' long-recognized prerogative to maintain the confidentiality of its own records as well as its vital function as overseer of the Executive Branch." <u>Paisley v. CIA</u>, 712 F.2d 686, 693 n.30 (D.C. Cir. 1983) (citing <u>McGehee v. CIA</u>, 697

Although in <u>ACLU v. CIA</u> the Court of Appeals explained these governing policy considerations in the context of a FOIA case, those same policy concerns should apply to the preservation relief that has been granted to Petitioner, which occasions similar kinds of harms that the Court of Appeals considered so important to avoid.   Indeed, the Court should not require the government to retain a copy of the SSCI Report or deliver a copy to the Court.  The Senate Committee still controls the SSCI Report and has requested that the Executive Branch return copies currently in its possession.  An order requiring preservation of the SSCI Report or delivery of it to the Court would unduly interfere with the 2009 agreement negotiated between the Senate Committee and the CIA and with the larger oversight relationship between the Senate Committee and the CIA. Such potential interference and burdens make the preservation relief requested by Petitioner especially improper and unwarranted.[4]

---

F.2d 1095, 1107–08 (D.C. Cir. 1983) and <u>Goland v. CIA</u>, 607 F.2d 339, 348 n.48 (D.C. Cir. 1978)), <u>vacated</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, 724 F.2d 201 (D.C. Cir. 1984) (per curiam)).  As further explained in <u>McGehee</u>:

> Congress . . . should not be forced to abandon its long-acknowledged right to keep its records secret or its ability to oversee the activities of federal agencies (a supervisory authority it exercises in part through exchange of documents with those agencies to "facilitate their proper functioning in accordance with Congress' originating intent.")

697 F.2d at 1108 (quoting <u>Goland</u>, 607 F.2d at 346).

[4] Even under the standard for preservation argued by Petitioner, <u>see</u> Mot. at 10, a preservation order must be both necessary and not unduly burdensome.  <u>See</u> <u>Pueblo of Laguna v. United States</u>, 60 Fed. Cl. 133, 137–38 (Fed. Cl. 2004) ("[T]he Supreme Court has cautioned, 'inherent powers must be exercised with restraint and discretion,'" such that a party seeking a preservation order must demonstrate that the preservation order is necessary and not unduly burdensome) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).  As explained above, the Order unduly burdens the relationship between the political branches, and as explained below, the Order is unnecessary.  To be clear, Respondents do not concede that <u>Pueblo of Laguna</u> supplies the appropriate legal standard for issuance of a preservation order in these circumstances, especially given that the Order requires not just preservation but enjoins the government to deliver a copy of the Report to the CISO.  <u>Cf.</u> <u>Madden v. Wyeth</u>, No. 3-03-CV-0167-R, 2003 WL

In any event, based on intervening events and other factors, the Order is no longer necessary.   Accordingly, the government respectfully requests that the Court reconsider and vacate those two portions of the Order.[5]

1.   The first intervening fact alleviating any need for the Order is that a copy of the SSCI Report will remain in the possession of the Executive Branch, stored by the National Archives and Record Administration.   On December 9, 2016, one day after Petitioner submitted his reply brief, the Counsel to the President informed the Chairman and Vice-Chairman of the SSCI that a copy of the Report will be preserved under the Presidential Records Act, 44 U.S.C. §§ 2201-2209 (requiring that the Archivist of the United States assume responsibility for preservation of "Presidential records," defined generally by the statute as documentary materials "received by the President").   See Ex. 2, Letter from W. Neil Eggleston to the Honorable Richard Burr, Chairman, Senate Select Comm. on Intelligence (Dec. 9, 2016); see also Letter from W. Neil Eggleston to the Honorable Dianne Feinstein, Vice Chairman, Senate Select Comm. on Intelligence (Dec. 9, 2016) (available at http://go.usa.gov/x86nB).   This action by the President means that the Report's continued existence is no longer (if it ever was) "contingent on political vicissitudes."   See Reply Br. at 2-3.   Even were the Executive to return its other copies to the

---

21443404, at *1 (N.D. Tex. Apr. 16, 2003) (motion to preserve evidence is injunctive remedy that should issue only upon an adequate showing that equitable relief is warranted).

[5] In the military commission trial of the accused September 11th conspirators, the military judge recently ordered the Department of Defense to preserve a copy of the Report, relying on this Court's Order as partial justification for his order.   See Ex. 1, Order, United States v. Khalid Shaikh Mohammad (KSM II), AE 286T ¶¶ 5(d), 7 (Jan. 10, 2017).   The military judge, though requested to do so, did not require the prosecution to lodge a copy of the Report with the commission.   Id. ¶¶ 6, 7.

SSCI and then the SSCI were to destroy all copies (including, presumably, the original),[6] a

highly unlikely scenario, a copy of the SSCI Report would still be preserved in the National

Archives pursuant to the Presidential Records Act.

    2.  A second intervening fact establishes that Petitioner unintentionally overstated the

need for the Order in general, and for the two SSCI-Report-preservation provisions in particular.

With respect to the SSCI Report, contrary to the press report that Petitioner invoked, the CIA's

Office of Inspector General has not destroyed the copy of the Report that was sent to it.  See

Mot. at 6 (citing M. Isikoff, "Senate Report on CIA Torture is One Step Closer to Disappearing,"

Yahoo News, May 16, 2016).  Rather, as the attached declaration from the Director of the CIA

attests, both the CIA and the CIA's Office of Inspector General currently have in their possession

a copy of the final version of the Report.[7]  Ex. 3, Decl. of John O. Brennan, Director Central

Intelligence Agency at ¶ 11.[8]

    Accordingly, Petitioner erred when he implied that the government had violated its

representation in ACLU v. CIA that it would preserve the status quo with respect to the SSCI

Report in its possession pending the final resolution of that case.  See Reply Br. at 6.[9]  To the

_____

[6] Petitioner's requested relief makes sense only if Petitioner has assumed that the Committee intends to not only recall all copies of the Report, but to destroy them as well.

[7] Although the initial media reports characterized the CIA IG's copy as having been lost or destroyed, the CIA understands that that copy was subsequently located.

[8] The need to obtain this declaration so that this fact and certain others detailed therein could be brought to the Court's attention was a primary reason for the government's request for an extension of time to respond fully to Petitioner's motion.  See Respts.' Interim Resp. to Petr.'s Mot. for a Preservation Order at 7 (Dec. 5, 2016) (ECF No. 262).

[9] See also ACLU v. CIA, Civ. Action No. 13-1870 (JEB), Defs.' Resp. to Pls.' Emerg. Mot. for an Order Protecting this Court's Juris. at 1, 3-4, (D.D.C. Feb. 6, 2015) (ECF No. 42) (representing that government would "preserve the status quo regarding the Full Report absent either leave of court or resolution of this litigation in the government's favor.").

contrary, that representation was accurate when Petitioner filed his motion, and remains so to this day.[10]

Furthermore, with respect to the need for preservation relief more generally, Petitioner also failed to note that for over eight years, the CIA has had an internal directive barring it from destroying information relating to Guantánamo and CIA detainees.  In 2007, after the CIA's well-publicized destruction of videotapes of some of its interrogations referenced in Petitioner's Motion, then-Director Michael Hayden ordered the agency to preserve all documents, information, and evidence relating to any detainee either held at Guantanamo Bay or held by the CIA.  Brennan Decl., ¶ 6.  That directive remains in full force today.  Id., ¶ 7.  And since then-Director Hayden issued that order, there have been no substantiated reports of the improper destruction of any such material warranting a preservation order.  Accordingly, Petitioner incorrectly justified the relief he requested by asserting that "[t]here is already a pattern of evidence destruction in this case."  Mot. at 18.  To the contrary, there was simply no need for the Court to order preservation relief in this matter.  See Pueblo of Laguna, 60 Fed. Cl. at 138 (party seeking preservation order must show that "absent a court order, there is a significant risk that relevant evidence will be lost or destroyed.").

3.  Lastly, the government respectfully suggests that the two SSCI-Report-preservation provisions appear to have been based on an apparent misapprehension of the relevance of the

---

[10] The ACLU has petitioned the Supreme Court for certiorari.  See ACLU v. CIA, No. 16-629, Pet. For Cert. (U.S. Nov. 9, 2016).  As that case is still pending, the government's commitment to preserve the status quo remains in force.  Moreover, Respondents will advise this Court and Petitioner's counsel in advance of any change in that status quo.  But given the President's lodging of a copy of the SSCI Report in the National Archives, even were the Supreme Court to deny certiorari, or to grant it and then affirm, and even were the Executive then to return all other copies to the SSCI, one copy of the report would still remain within the Executive Branch.

Report reflected in Petitioner's Reply.  As an initial matter, the government notes that the intelligence documents that were the source of the facts related the Report remain in the possession of the CIA.  Moreover, the documents are being preserved pursuant to then-Director Hayden's preservation directive. [11]  <u>See</u> Brennan Decl. ¶¶ 6-7.  And these intelligence documents will continue to be protected under both that directive and under those portions of this Court's Order to which the government is not seeking reconsideration, <u>see</u> Order at 1 ¶ 3 (requiring, in part, the preservation of all documents referenced or relied on in the SSCI Report).

With respect to the relevance of the SSCI Report to this case more generally, this habeas action challenges the legality of Petitioner's continuing detention under the AUMF as informed by the laws of war.  The government does not rely on any post-capture statements by Petitioner to justify his detention, nor does it intend to do so.  Accordingly, even if, as Petitioner contends, <u>see</u> Reply Br. at 8, a portion of the Report documents his interrogations while in CIA custody, that portion is unlikely to show that he is improperly detained under the AUMF and, so, is likely not discoverable.  <u>See</u> Case Mgmt. Order (Nov. 6, 2008) (ECF No. 53) ("Merits Judge may, for good cause, permit the petitioner to obtain limited discovery" if the discovery request is "likely to produce evidence that demonstrates that the petitioner's detention is unlawful").

---

[11] As explained in Director Brennan's declaration, the primary repository of information used by the Senate Committee in its study was an electronic database known as RDINet.  Brennan Decl. ¶ 8.  RDINet contains millions of highly classified documents, including emails, memoranda, and other sensitive records containing classified and compartmented information about intelligence sources and methods; pseudonyms and true names of CIA personnel, assets, and liaison officers, and details about liaison relationships.  <u>Id</u>.  Director Brennan has confirmed that the contents of RDINet are subject to former Director Hayden's preservation directive, <u>id</u>. ¶ 9, so there was no need for judicial relief to preserve the documents underlying the SSCI Report or those pertaining to Petitioner.

Similarly misplaced is his argument that he needs the Report to support a conditions-of-confinement claim.  To be sure, pursuant to Aamer v. Obama, Petitioner is entitled in this action to challenge not only the legality of his continuing detention, but also the conditions of that detention. 742 F.3d 1023, 1038 (D.C. Cir. 2014).  But Petitioner's Reply, see Reply Br. at 7-8, misapprehends just what a proper condition-of-confinement claim is.  Under Aamer, Petitioner is entitled to challenge only his current conditions of confinement.  Aamer, 742 F.3d at 1035 (explaining that a conditions-of-confinement claim brought through habeas addresses whether "the conditions in which the petitioner is currently being held violate the law.") (emphasis added).  Petitioner has brought no such claim here.  Rather, Petitioner merely addresses his alleged former conditions-of-confinement while held in CIA custody.  Reply at 7-8, 10.  Aamer provides no basis for such a claim.  But to the extent that facts reflected in the Report nonetheless might be considered relevant here, the underlying intelligence documents, which were the source of the facts related in the Report, remain in the possession of the CIA and are being preserved, as explained above.

In summary, the bases reflected in Petitioner's Reply for the two SSCI-Report-preservation provisions of the Order—that is, a purported pattern of destruction and a danger that the Report will cease to exist—are unfounded.  In addition, Petitioner's Reply does not make clear the appropriate relevance of the Report here, but whatever the case, it is clear that the underlying source documents supporting any relevant facts contained in the Report are being and will be preserved.  The Court also should reconsider its Order based on the policy concerns noted by the Court of Appeals in ACLU v. CIA, including Congress's express intent to control dissemination of the Report.  The government respectfully requests that the Court vacate both the

direction to the government to preserve the SSCI Report currently in its possession and to lodge a copy of the Report with the CISO.

## II.  Respondents' Request that the Court Clarify the Scope of its Order

Respondents also respectfully request that the Court clarify the scope of a separate provision of the Order.  The Order states that "Respondents shall preserve and maintain all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, relating to the torture, mistreatment, and/or abuse of detainees held in the custody of the Executive Branch since September 11, 2001."  Order at 1.  The phrase "detainees held in the custody of the Executive Branch," without qualification, suggests that the Order, literally interpreted, could apply with respect to all individuals detained by the government, for example, convicted criminals incarcerated in federal prisons, criminal defendants held under federal pretrial detention, and even immigration detainees.

Petitioner's Reply, upon which the Court based its ruling, does not provide any guidance, argument, or rationale regarding this issue.  Indeed, like Petitioner's Motion itself, the Reply focuses primarily on the SSCI Report and does not address with any specificity Petitioner's other preservation requests.  Even under the <u>Pueblo of Laguna</u> standard, "the proponent [of a preservation order] must show that the particular steps to be adopted will be effective, but not overbroad[.]"  60 Fed. Cl. at 138.  Neither in his Reply nor otherwise has Petitioner justified preservation relief as broad as reflected in a literal reading of the preservation order, including how such relief could be justified based on the specifics of his habeas case.

Accordingly, Respondents respectfully request that the Court, consistent with the scope of this habeas proceeding, reconsider this aspect of its Order and eliminate the preservation requirement as unnecessary for the reasons explained above.  <u>See</u> <u>supra</u> at 9 (addressing CIA's

long-standing preservation directive).  Alternatively, at a minimum, the Court should clarify that its Order applies only with respect to individuals who have been detained at Guantánamo Bay pursuant to the AUMF (and does not include the SSCI Report itself, for the reasons set out above).[12]  Such a clarification would render the Order consistent with the CIA's long-standing preservation directive.  And such a clarification would also mirror preservation orders entered by other District Judges in these Guantanamo habeas cases.  See, e.g., Anam v. Obama, No. 04-1194 (HHK) (D.D.C), Order (June 10, 2005) (ECF No. 124) (requiring preservation of "evidence and information regarding the torture, mistreatment, and abuse of detainees now at the United States Naval Base at Guantanamo Bay, Cuba"); Abdah v. Obama, 04-1254 (D.D.C.), Order (June 10, 2005) (ECF No. 155) (same).  As explained above, Petitioner offers no serious basis, rationale, or explanation of need for any broader preservation order, or indeed, any order at all.

### III.   Respondents Request That The Court Stay Their Obligation Concerning Handling and Disposition of the SSCI Report Pending Possible Appellate Review

Should the Court decline to reconsider the portions of the Order directing Respondents to take action with respect to the copies of the SSCI Report in their possession, or decline to reconsider or clarify the Order's reference to "detainees held in the custody of the Executive Branch," the government will consider whether to seek appellate review of the Order. Accordingly, as to any of these three provisions that it does not alter, Respondents respectfully request that the Court stay those provisions pending final resolution of any appellate review or

---

[12] To be clear, the government is not seeking reconsideration or clarification of the directive to preserve all evidence, documents, and information relating to Petitioner, see Order at 1, exclusive of the obligation to preserve a copy of the SSCI Report.  Nevertheless, the government maintains that this aspect of the Order is also unnecessary in light of the CIA's internal preservation directive.

until Respondents decide not to seek such review.[13]  Additionally, Respondents respectfully request a stay of these three obligations pending the Court's decision on this motion for reconsideration.

A stay pending appellate review is appropriate where (1) the moving party has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury absent the stay; (3) the stay will not substantially injure the other parties interested in the proceedings; and (4) the public interest will be served by a stay.  Nken v. Holder, 556 U.S. 418, 434 (2009); United States v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003) (internal citation omitted).

Here, as explained above, the facts demonstrate that there is no significant risk that the SSCI Report will be destroyed or that information underlying the Report will be destroyed; indeed, the opposite is true.  Respondents thus have a strong likelihood of success should they decide to seek appellate review.  See Pueblo of Laguna, 60 Fed. Cl. at 138 (in the absence of a significant risk that the relevant evidence will be lost or destroyed, a preservation order is not necessary).  Respondents recognize that should the Court decline to partially reconsider its Order, the Court will have disagreed with the government's position on the need and propriety of depositing a copy of the SSCI Report with the CISO.  But even so, Respondents respectfully submit that the discussion above establishes that they "have made out a 'substantial case on the merits,'" a case sufficient to "weigh[] in favor of a stay."  Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Rep., 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (quoting Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

---

[13] Given the serious issues raised by the Order, Respondents will move expeditiously to seek a determination whether to seek appellate review.

As for the analysis of irreparable harm and the public interest, compliance with the Order's directive to deliver a copy of the SSCI Report to the CISO would immediately impose the very burdens that animated the Court of Appeals' decision in <u>ACLU v. CIA</u>.  Specifically, further dissemination of the Report by the Executive, even under court order, would improperly burden the relations between the Executive and Legislative Branches.  Forcing the Executive Branch to further disseminate the SSCI Report by lodging a copy with the CISO would be inconsistent with the express demand of the SSCI upon the Executive Branch for the return of the document and would impede Congress' oversight role and discourage the flow of information between the two coordinate branches of government.  <u>See</u> <u>supra</u> at 5-6.  Pending any necessary appellate review, the Court should stay its hand from imposing such burdens upon the relationship between the political branches and upon the public interest as reflected in the special policy considerations credited by the Court of Appeals in <u>ACLU v. CIA</u>.

Lastly, the stay would not substantially injure Petitioner because, as explained above, there simply is no risk that every copy of the SSCI Report in the possession of the Executive Branch will be destroyed and because information underlying the Report is subject to a long-standing preservation directive by the CIA.

For these reasons, should the Court deny Respondents' motion for partial reconsideration and clarification, in whole or in part, a stay pending resolution of this Motion and Respondents' determination whether to seek appellate review (and, should appellate review be sought, pending resolution of that proceeding) is warranted.

## CONCLUSION

For the reasons stated above, the Court should reconsider those portions of the Order of December 28, 2016 that require the government to preserve copies of the SSCI Report in its

possession and to submit a copy to the CISO.  Additionally, the government respectfully requests

that the Court reconsider the more general mandate of the Order, or at least narrow the scope of

that portion of the Order to refer solely to detainees held at Guantanamo Bay, pursuant to the

AUMF.  In the alternative, should the Court decline any of these requests, the government

respectfully requests the Court stay enforcement of any of these three provisions that remain

extant so that the government may determine whether to seek appellate review and seek such

review if appropriate.  The government also respectfully requests a stay of these three provisions

during the pendency of this Motion for Reconsideration.

January 13, 2017                                    Respectfully submitted,

                                                   BENJAMIN C. MIZER
                                                   Principal Deputy Assistant Attorney General

                                                   JOSEPH H. HUNT
                                                   Director

                                                   TERRY M. HENRY
                                                   Assistant Branch Director

                                                   */s/ Kristina A. Wolfe*
                                                   RONALD J. WILTSIE (D.C. Bar No. 431562)
                                                   KRISTINA A. WOLFE
                                                   Attorneys
                                                   Civil Division, Federal Programs Branch
                                                   United States Department of Justice
                                                   20 Massachusetts Ave NW
                                                   Washington DC 20530
                                                   Tel: (202) 353-4519
                                                   Fax: (202) 616-8460
                                                   E-mail: Kristina.Wolfe@usdoj.gov
                                                   Attorneys for Respondent