**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ) | |
| ) | |
| ABD AL RAHIM HUSSEIN AL NASHIRI, ) | CIVIL ACTION |
| ) | (HABEAS CORPUS) |
| ) | |
| *Petitioner*, ) | |
| *v.* ) | No. 08-Civ-1207 (RCL) |
| ) | Misc. No. 08-mc-442 (TFH) |
| DONALD TRUMP, *et al.*, ) | |
| ) | *before* |
| *Respondents.* ) | Judge Royce C. Lamberth |
| ) | |

**REPLY
IN SUPPORT OF PETITIONER'S
SUPPLEMENTAL PETITION
FOR A WRIT OF HABEAS CORPUS**

## TABLE OF CONTENTS

Contents

Table of Authorities ........................................................................................................ ii

Introduction ......................................................................................................................1

Reply ................................................................................................................................4

    I.      This Court has jurisdiction..........................................................................4

    II.    Abstention does not apply to the claims asserted. .....................................9

        A.   Abstention does not apply when a petitioner challenges the personal jurisdiction of a military commission........................................................................... 9

        B.   Petitioner's first and second grounds for relief fall squarely within the personal jurisdiction exception that the Circuit and Respondents previously recognized....... 11

        C.   Petitioner's third ground for relief should also be deemed to be excepted from the Circuit's abstention decision. ............................................................................... 14

    III.   In the alternative, this Court should hold that abstention is no longer appropriate due to unreasonable delay ...............................................................17

Conclusion ......................................................................................................................23

Certificate of Service ......................................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) ................................................................................................ 5

*Al Bahlul v. United States*,
767 F.3d 1 (D.C. Cir. 2014) ..................................................................................................... 21

*Al-Nashiri v. MacDonald*,
741 F.3d 1002 (9th Cir. 2013) ................................................................................................... 1

*Borum v. Brentwood Village*,
218 F. Supp. 3d 1 (D.D.C. 2016) ............................................................................................... 5

*Boumediene v. Bush*,
553 U.S. 723 (2008) ......................................................................................................... 5, 6, 21

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015) ............................................................................................... 15

*Campbell v. McGruder*,
580 F.2d 521 (D.C. Cir. 1978) ................................................................................................. 17

*Ex parte Milligan*,
4 Wall. 2 (1866) ......................................................................................................................... 7

*Ex parte Quirin*,
317 U.S. 1 (1942) .................................................................................................................... 4, 7

*Hamdan v. Gates*,
565 F.Supp.2d 130 (D.D.C. 2008) ........................................................................................... 22

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) .......................................................................................................... passim

*Hamdan v. United States*,
696 F.3d 1238 (D.C. Cir. 2012) ......................................................................................... 21, 22

*In re Al-Nashiri*,
835 F.3d 110 (D.C. Cir. 2016) ........................................................................................... passim

*In re Guantanamo Bay Detainee Continued Access to Counsel*,
892 F.Supp.2d 8 (D.D.C. 2012) ................................................................................................. 2

*In re Khadr*,
823 F.3d 92 (D.C. Cir. 2016) ................................................................................................... 16

*In re Yamashita*,
327 U.S. 1 (1946) ....................................................................................................................... 6

*Insurance Federation of Pennsylvania v. Supreme Court of Pennsylvania*,
669 F.2d 112 (3d Cir. 1982) ....................................................................................................... 5

*Johnson v. Avery*,
393 U.S. 483 (1969) ................................................................................................................. 15

*Kugler v. Helfand*,
    421 U.S. 117 (1975)................................................................................................. 13

*Nissan Motor Corp. in USA v. Harding*,
    739 F.2d 1005 (5th Cir. 1984) ............................................................................... 18

*O'Sullivan v. Boerckel*,
    526 U.S. 838 (1999) ............................................................................................... 16

*Parisi v. Davidson*,
    405 U.S. 34 (1972) ................................................................................................. 12

*Procunier v. Martinez*,
    416 U.S. 396 (1974)............................................................................................... 16

*Reid v. Covert*,
    354 U.S. 1 (1956) ............................................................................................... 4, 13

*Schlessinger v. Councilman*,
    420 U.S. 738 (1975)........................................................................................... 7, 13

*Swain v. Pressley*,
    430 U.S. 372 (1977)................................................................................................. 6

*The Case of Wolfe Tone*,
    [1798] 27 St. Tr. 614 ............................................................................................... 7

*William Penn Apartments v. D.C. Court of Appeals*,
    39 F. Supp. 3d 11 (D.D.C. 2014) ............................................................................ 5

## U.S. Code

10 U.S.C. § 950g.......................................................................................................... 7

10 U.S.C. § 950j (2006) .............................................................................................. 7

10 U.S.C.§ 950f .......................................................................................................... 16

## Legislative Materials

Congressional Research Service, *The Military Commissions Act of 2009: Overview and Legal
    Issues*, R41163 (Aug. 4, 2014)................................................................................ 8

Military Commissions Act of 2006, 120 Stat. 2600 .................................................... 7

## Executive Materials

E.O. 13567, *Periodic Review of Individuals Detained at Guantánamo Bay Naval Station
    Pursuant to the Authorization for Use of Military Force*, 76 Fed. Reg. 13277 (Mar. 7, 2011) . 8

*United States v. Nashiri*, Government Motion for a Ruling that the Military Commissions Act of
    2009 Does Not Violate Equal Protection, AE058 (Mar. 12, 2012) .......................... 14

**Miscellaneous**

Act for the Abolition of the Court of Star Chamber, 17 Car. I. c. 10 ............................................ 6

COKE, INST. ................................................................................................................................... 6

Dallin H. Oaks, *Habeas Corpus in the States 1776-1865*, 32 U. CHI. L. REV. 243 (1965) ............ 6

Fed. Prac. & Proc. Civ. (3d ed.) ................................................................................................... 5

R.J. SHARPE, THE LAW OF HABEAS CORPUS (1990) ....................................................................... 6

THE FEDERALIST ............................................................................................................................ 6

### INTRODUCTION

Petitioner's case is unusual. He is not alleged to have had any involvement in the September 11th attack or the war in Afghanistan. He is accused of complicity in acts of terrorism in Yemen that occurred at least a year before hostilities of any kind existed in that country. He is, in short, a civilian terrorism suspect charged with serious crimes that have been the subject of an indictment in the Southern District of New York since 2003. And like any civilian criminal suspect, he is entitled to a regular trial. He has consistently asserted that right since he was first captured in 2002. And because he is not and was not a belligerent in any identifiable war, he has objected through every available means to Respondents' efforts to try him and sentence him to death before a military commission in Guantanamo.

Respondents are correct about one thing: Petitioner has repeatedly sought the intervention of the federal courts to put a stop to Respondents' legally dubious effort to try him in a tribunal system that is designed for war crime defendants and whose primary distinguishing feature is the admissibility of evidence derived from torture. Although these efforts have been unsuccessful, Petitioner has not failed because his claims lack merit, but because Respondents have persuaded courts that the *manner* by which he sought to challenge Respondents' treatment of him was legally defective.

When Petitioner sought to invalidate the military commission proceedings through a straightforward declaratory judgment action, Respondents succeeded in dismissing the case on the ground that non-habeas corpus actions were jurisdictionally barred. *Al-Nashiri v. MacDonald*, 741 F.3d 1002 (9th Cir. 2013). When Petitioner then brought a habeas petition challenging the military commission's subject-matter jurisdiction, Respondents persuaded the Circuit to abstain because Petitioner did not challenge *personal* jurisdiction. *In re Al-Nashiri*,

835 F.3d 110 (D.C. Cir. 2016). Now that Petitioner has scrupulously followed the Circuit's instructions and (with one narrow exception) limited his claims to personal jurisdiction, Respondents ask this Court to ignore everything they have previously argued, to ignore everything that the Circuit held, and to ignore the merits of his claims again.

Enough is enough. All Petitioner asks is that this Court follow the law as the Circuit has defined it. Under that law, there is no basis for this Court to refuse to decide Petitioner's first two grounds for habeas relief.  Respondents' jurisdictional arguments are meritless because habeas has always been available to individuals, like Petitioner, who assert that they are civilians over whom the military has no jurisdiction. Even when Congress has provided that one forum has exclusive jurisdiction over post-trial appeals, the Supreme Court has consistently held that habeas corpus remains available pretrial to invalidate an unconstitutional assertion of personal jurisdiction in a military tribunal. And because Petitioner's first two grounds for habeas relief challenge the exercise of personal jurisdiction in a military tribunal, there is no good-faith basis for abstention under the Circuit's law.

The only open question is whether this Court should abstain from deciding Petitioner's claim that he cannot be tried whilst being denied his constitutional and statutory entitlement to qualified counsel in a capital case. Should this Court grant relief on either of his first two claims, this ground would be moot. But should this Court determine that Petitioner is lawfully subject to military commission jurisdiction, this Court should not abstain from deciding this third ground because the absence of qualified counsel "prevent[s] him from fully litigating his defenses." *Al-Nashiri*, 835 F.3d at 121 n.4. Petitioner cannot litigate any defense in any forum without counsel. "They are inseparable concepts and must run together." *In re Guantanamo Bay Detainee Continued Access to Counsel*, 892 F.Supp.2d 8, 15 (D.D.C. 2012). The denial of the right to

counsel, particularly in a capital case, causes pervasive and irreparable harm and is a category of claim that falls within the constitutional core of habeas corpus. *Ibid*.

Finally, in the alternative, Petitioner asks this Court to reject Respondents' abstention arguments on grounds of unreasonable delay. A year-and-a-half ago, the Circuit invited Petitioner to seek habeas relief if it appeared likely that there would be an "unreasonable delay" in his accessing the Article III courts via a post-trial appeal. *Al-Nashiri*, 835 F.3d at 134. Since that time, it has become clear that the best-case scenario is that Petitioner's trial will not begin until 2020, meaning that any appeal in the Article III courts is unlikely to occur until a decade from now. Petitioner's first opportunity for judicial review, therefore, is unlikely to occur until nearly *three decades* after he was first detained. Pre-trial proceedings in his case have dragged on for nine years because of reasons wholly outside of Petitioner's control, such as the change in Presidential administration, the inability to provide discovery, and the prosecution's interlocutory appeals. And so, given the extraordinary and unreasonable amount of time that Petitioner has already languished in Respondents' custody, Respondents should no longer be able to claim the benefit of equitable abstention doctrines that defer courts' review of their conduct.

Petitioner has carefully limited his claims to satisfy all the requirements set forth by the Circuit for a pretrial habeas petition. Respondents have offered no basis on which they could prevail on the merits of those claims. This Court should therefore follow the law as it is, decide this case on the merits, and grant Petitioner the limited relief he has requested.

## REPLY

### I.   THIS COURT HAS JURISDICTION.

For the third time, Respondents seek to have the courts hold that they "lack[] jurisdiction … because Petitioner's claims do not lie within the bounds of habeas[.]" Resp. 19. This argument was rightfully ignored both by this Court and the D.C. Circuit. And it is belied by centuries of legal precedent on the traditional bounds of habeas corpus.

1.   Respondents made this identical argument, relying upon the same cases, in 2014, Dkt. 235, at 9 n.7, and then again before the Circuit in 2015. *In re Al-Nashiri*, Case No. 15-1023, Brief of Respondents, at 59-60 (D.C. Cir., Dec. 25, 2015). This Court ignored it completely and the Circuit, for its part, simply noted the argument and stated that it "need not consider the district court's subject matter jurisdiction any further" because this Court had denied relief on the "threshold ground" of abstention. *Al-Nashiri*, 835 F.3d at 117, n.1.

For good reason. As the Circuit recognized in this very case, pretrial habeas is appropriate where, as here, "there is a substantial question whether a military tribunal has personal jurisdiction over the defendant." *Al-Nashiri*, 835 F.3d at 133 (*quoting Hamdan v. Rumsfeld*, 548 U.S. 557, 585 n.16 (2006)). Habeas corpus was granted on the category of claim asserted here in *Reid v. Covert*, 354 U.S. 1 (1956). In *Ex parte Quirin*, 317 U.S. 1, 25 (1942), the Supreme Court refused to construe the executive order that established a military commission as "preclud[ing] access to the courts [via habeas corpus] for determining its applicability to the particular case." And the Circuit's lengthy discussion of when abstention is and is not appropriate in pretrial habeas cases would have made no sense if there was no habeas jurisdiction to abstain from exercising in the first place.

In fact, had Respondents' jurisdictional argument been colorable, there is no reason to believe this Court would have failed to address it. Abstention defenses, unless statutorily

compelled, are governed by Fed. R. Civ. Pro. 12(b)(6), not 12(b)(1). *See*, *e.g.*, *Insurance Federation of Pennsylvania v. Supreme Court of Pennsylvania*, 669 F.2d 112, 113-14 (3d Cir. 1982); *Borum v. Brentwood Village*, 218 F. Supp. 3d 1, 13 (D.D.C. 2016); *William Penn Apartments v. D.C. Court of Appeals*, 39 F. Supp. 3d 11, 19 (D.D.C. 2014). Just a few months before he decided this case, then-Chief Judge Roberts held that when a motion asserts both 12(b)(1) jurisdictional grounds and 12(b)(6) abstention grounds, "a court should first consider the Rule 12(b)(1) motion because once a court determines that it lacks subject matter jurisdiction, it can proceed no further." *William Penn Apartments*, 39 F. Supp. 3d at 15 (*quoting Center for Biological Diversity v. Jackson*, 815 F.Supp.2d 85, 90 (D.D.C. 2011)); *see* 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) (Presented with a challenge to subject-matter jurisdiction, "the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.").

2.      Respondents cite no authority holding that a challenge to personal jurisdiction is not the sort of claim "that may be raised in a federal habeas petition under [28 U.S.C.] section 2241." *Aamer v. Obama*, 742 F.3d 1023, 1030 (D.C. Cir. 2014). In fact, legal history before, during, and after the Founding shows that Petitioner's claims fit within "'at the absolute minimum' … the writ as it existed when the Constitution was drafted and ratified." *Boumediene v. Bush*, 553 U.S. 723, 746 (2008).

At common law, habeas was the principal procedural vehicle for obtaining judicial review over a special tribunal's assertion of jurisdiction. According to a leading historian, "[t]here can be little doubt … that habeas corpus in its *cum cause* form was being used for [testing the jurisdiction of inferior tribunals] independently of privilege or certiorari by the mid-

fifteenth century." R.J. SHARPE, THE LAW OF HABEAS CORPUS 5 (1990). Lord Coke chronicled the use of the writ by the King's Bench to oversee inferior courts and "keep them within their proper jurisdiction." COKE, 4 INST. 1170. Indeed, the writ was so indispensable for checking against executive tribunals' assertion of jurisdiction that Parliament guaranteed it for that purpose in the Act for the Abolition of the Court of Star Chamber, 17 Car. I. c. 10 § 6.

In the United States, Chief Justice Burger concluded that inquiring into "whether a committing court had proper jurisdiction" is at the center of habeas' constitutional core. *Swain v. Pressley*, 430 U.S. 372, 385 (1977) (Burger, C.J., concurring). Hamilton celebrated habeas as the traditional means of securing against "arbitrary methods of prosecuting pretended offenses." THE FEDERALIST No. 83 (Hamilton). And in the Nineteenth century, the writ's predominant usage was for raising pre-trial challenges to jurisdiction. Dallin H. Oaks, *Habeas Corpus in the States 1776-1865*, 32 U. CHI. L. REV. 243, 258 (1965) ("[M]ost petitions involving criminal commitments preceded conviction. In fact, many were submitted immediately upon the defendant's being arrested and before he was even brought before a judicial officer for formal commitment."); *see also Boumediene*, 553 U.S. at 780 ("the common-law habeas court's role was most extensive in cases of pretrial and noncriminal detention[.]").

The writ has played an especially important role in ensuring the legality of military jurisdiction. *See In re Yamashita*, 327 U.S. 1, 9 (1946) ("[T]he Executive branch of the government could not, unless there was suspension of the writ, withdraw from the courts the duty and power to make such inquiry into the authority of the commission as may be made by habeas corpus."); *Johnson v. Eisentrager*, 339 U.S. 763, 775 (1950) (even during declared wars, an individual can challenge "the existence of a state of war and whether he is an alien enemy"). This was true in the United Kingdom at the time of the Founding. *See, e.g., The Case of Wolfe*

*Tone*, [1798] 27 St. Tr. 614. This was true during the Civil War. *See, e.g.*, *Ex parte Milligan*, 4 Wall. 2, 123-24 (1866). This was true at the peak of World War II. *See, e.g.*, *Quirin*, 317 U.S. at 25. And this was true a decade ago when the Supreme Court granted the writ in the face of a habeas-stripping statute. *Hamdan*, 548 U.S. at 572-84.

Respondents suggest that the D.C. Circuit's "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission," 10 U.S.C. § 950g(a), should be treated as an implied repeal of this court's habeas jurisdiction in military commission cases. Resp. 22. But that authority to review a final judgment does not bar this Court from deciding a habeas corpus petition that challenges the military commission's jurisdiction in the first place. This precise argument was raised and rejected in *Schlessinger v. Councilman*, 420 U.S. 738 (1975). Just as Respondents attempt to do here, the government asserted that the exclusivity of the post-trial appeal scheme for courts-martial worked as an implicit repeal of habeas jurisdiction and the Supreme Court rejected this argument out of hand. *Id.* at 751-53.

Section 950g(a)'s text, for its part, says nothing that would work an implied repeal of this Court's habeas jurisdiction. And just as in *Councilman*, "[n]or does the legislative history justify an interpretation of the language so at odds with its clear purport." *Councilman*, 420 U.S. at 752. To the contrary, in the Military Commissions Act of 2006, 120 Stat. 2600, Congress recognized that claims of the kind asserted here sounded in habeas and expressly sought to curtail habeas jurisdiction to prevent those claims from being heard pretrial. 10 U.S.C. § 950j(b) (2006). Specifically, Congress stripped the district courts of jurisdiction over any cause of action "including section 2241 of title 28 or any other habeas corpus provision … relating to the prosecution, trial, or judgment of a military commission[.]" *Ibid*. This was done to ensure that the statute's scheme for post-trial appeals was the "sole basis for review of military commission

procedures and actions." *Ibid*. The Congressional Research Service described this subsection as ensuring that "[o]ther review by a civilian court, including review on petition of habeas corpus, is expressly prohibited." Congressional Research Service, *The Military Commissions Act of 2009: Overview and Legal Issues*, R41163, at 54 (Aug. 4, 2014), *archived at* https://perma.cc/6W57-MPTN. Congress then repealed §950j(b) in 2009 to ensure that "[o]ther review by a civilian court, including review on petition of habeas corpus, is no longer expressly prohibited." *Ibid*. Congress, in other words, knows how to curtail habeas jurisdiction over military commission cases. It has done so in the past. When it seeks to do so, it does so expressly. And the legislative back-and-forth over 950j(b) would have made no sense if pretrial habeas claims were already outside the scope of habeas corpus. *Cf. Hamdan*, 548 U.S. at 579-80.

3.      Finally, even taking Respondents' cramped view of habeas on its own terms, they are simply wrong that Petitioner's confinement will not "change in place, character, condition, or duration if the relief he seeks is granted." Resp. 21. By virtue of his status as a military commission defendant for the past nine years, Petitioner has been precluded from challenging his detention or seeking release from the periodic review boards. E.O. 13567, *Periodic Review of Individuals Detained at Guantánamo Bay Naval Station Pursuant to the Authorization for Use of Military Force*, 76 Fed. Reg. 13277 § 1(a) (Mar. 7, 2011) (providing a process for periodic detention review to Guantanamo detainees "except for those detainees against whom charges are pending or a judgment of conviction has been entered [in a military commission]."). That legal disability, and his indefinite detention without judicial review, will continue so long as those charges remain pending. And as the uncontroverted record shows, the protracted military commission process is itself a dominant aspect of Petitioner's conditions of confinement that is indistinguishable from the RDI Program. Crosby Decl. ¶¶ 20-27. Prevailing in this Court will,

therefore, both 1) provide Petitioner with his first opportunity to seek judicial review of his detention in fifteen years and 2) ameliorate conditions of confinement that "have a permanently disabling effect on his personality and his capacity to cooperate meaningfully with his attorneys." *Id*. ¶ 27.

## II.   ABSTENTION DOES NOT APPLY TO THE CLAIMS ASSERTED.

Respondents ask this Court to abstain from deciding Petitioner's supplemental habeas petition, ostensibly based upon the abstention doctrine the Circuit crafted in *In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016). Most of Respondents' brief, however, is dedicated to recycling the policy arguments that it made to persuade the Circuit to fashion the general abstention doctrine in the first place. Resp. 22-28. Those arguments are beside the point. In his supplemental petition, Petitioner fully accepts the law as it is. The only question here is whether the claims he now asserts fall within the exceptions to abstention that the Circuit left open. And that question, to which Respondents dedicate barely three pages of their brief, *id*. 32-34, turns on the nature of those claims.

### A.   Abstention does not apply when a petitioner challenges the personal jurisdiction of a military commission.

Prior to its most recent filing, Respondents repeatedly argued that the principal, and perhaps sole, exception to abstention in the military commissions context was for challenges to personal jurisdiction. Before this Court, Respondents argued "Petitioner has not raised a challenge to the military commission's personal jurisdiction over him, and *Councilman* requires abstention as to other jurisdictional challenges." Dkt. 235, at 23; *see also id*. at 25-26 (referring to the "exception to *Councilman* for a military tribunal's lack of personal jurisdiction over a defendant"). Before the Circuit, Respondents dedicated the fourth subsection of their merits brief

9

to the argument that Petitioner "does not qualify for the narrow personal-jurisdiction exception to abstention, as he has not challenged his status as an alien unprivileged enemy belligerent who is properly subject to military jurisdiction." *In re Al-Nashiri*, Case No. 15-1023, Brief for Respondents, 20, 55-56 (D.C. Cir., Dec. 28, 2014). And before the Supreme Court, in opposing certiorari, Respondents reiterated these arguments to distinguish *Reid* and *Hamdan*.  *Al-Nashiri v. Trump*, Case No. 16-8966, Brief for Respondents in Opposition 22-23 (U.S., Sept. 7, 2017). Indeed, at the hearing just last month, Respondents opposed Petitioner's motion for a temporary restraining order on the counsel issue, arguing that this Court "should abstain under the *Schlesinger v. Councilman*. This is not an issue of personal jurisdiction[.]" Dkt, 289, at 19.

Respondent's endorsement of a personal jurisdiction exception was important because the alternative would have been to foreclose all pretrial review; an extreme result that neither Respondents nor the Circuit accepted and that would have been inconsistent with nearly a century of Supreme Court case law. And had Respondents not conceded the existence of a personal jurisdiction exception, they would have had to defend the proposition that American citizens could be denied recourse to habeas corpus if they were charged before a military commission in violation of 10 U.S.C. § 948c.

Given these repeated concessions by Respondents, supported by a unanimous body of Supreme Court case law, the Circuit held that while abstention generally applied in military commission cases, "abstention is inappropriate where … 'the legal challenge turns on the status of the persons as to whom the military asserted its power'—that is, where 'there is a substantial question whether a military tribunal has personal jurisdiction over the defendant.'" *Al-Nashiri*, 835 F.3d at 133 (*quoting Hamdan*, 548 U.S. at 585 n.16). The Circuit made clear that this exception encompasses both statutory challenges to whether a petitioner is an "alien unprivileged

enemy belligerent" within the meaning of §948c as well as broader constitutional defects in

personal jurisdiction that arise when a petitioner can show that the military commissions system

is fundamentally irregular. *Al-Nashiri*, 835 F.3d at 134. "An irregularly constituted court," the

Circuit explained, "is 'ultra vires' and therefore necessarily lacks personal jurisdiction over any

defendant." *Ibid*. This, in turn, echoed the Circuit's earlier suggestion that abstention would not

have applied had Petitioner asserted that Congress violated the Constitution "in defining 'alien

unprivileged enemy belligerent' in a manner that includes him[.]" *Id*. at 130.

> **B.     Petitioner's first and second grounds for relief fall
> squarely within the personal jurisdiction exception that the
> Circuit and Respondents previously recognized.**

Petitioner has now done exactly what the Circuit instructed him to do. With the exception

of his third claim, discussed more below, Petitioner has limited his claims for relief to the

lawfulness of the military's exercise of personal jurisdiction over him; both respecting whether

personal jurisdiction over any defendant is lawful and whether personal jurisdiction over him, in

particular, is lawful.

Petitioner's first claim challenges Congress' power to subject a group of individuals to

criminal prosecution before a non-judicial tribunal, in which evidence derived from torture is not

only admissible but a mainstay, based solely on their citizenship status. Supp. Pet. 25-33. That

claim squarely asks whether Congress may dispense with longstanding constitutional and law-of-

war principles, including the Geneva Conventions, which have required equal justice under law

and non-discrimination in the delineation of personal jurisdiction since at least the end of World

War II. If Petitioner is right, then the military commissions are "irregular" in the most literal

sense of that term and therefore lack "personal jurisdiction over any defendant." *Al-Nashiri*, 835

F.3d at 134.

Petitioner's second claim is the very claim that Respondents and the Circuit both faulted him for not bringing previously. Before the Circuit, Respondents were adamant that the key defect in Petitioner's habeas petition was that he "does not qualify for the narrow personal-jurisdiction exception to abstention, as he has not challenged his status as an alien unprivileged enemy belligerent who is properly subject to military jurisdiction." *In re Al-Nashiri*, Case No. 15-1023, Brief for Respondent, at 20 (D.C. Cir., Dec. 28, 2015). Accepting this argument, the Circuit duly held that because Petitioner had not "challenge[d] his *status* as an alien unprivileged enemy belligerent … [t]he district court therefore did not err in abstaining from deciding [Petitioner's] pretrial challenge to the commission's subject matter jurisdiction." *Al-Nashiri*, 835 F.3d at 134 (original emphasis).[1]

Having taken Respondents and the Circuit at their word, Petitioner now challenges his status as an "alien unprivileged enemy belligerent" under 10 U.S.C. § 948c. And he asserts, in the alternative, that interpreting §948c in a way that would categorize him as a "belligerent," when he is at most a civilian suspect in a terrorism case, would exceed Congress' constitutional powers in precisely the same way that Congress' original definition of persons "accompanying ...

---

[1] Respondents admit that Petitioner now "challenges his membership in that group." Resp. 33. But they attempt to move the goal post yet again. Because that membership turns on "the question of the existence of hostilities at the time of his alleged crimes," broadly construed, they claim that even personal jurisdiction claims must also be foreclosed because the military commission judge has ruled that "the existence of hostilities is an issue for trial." Resp. 33. But this Court is in no way bound by a holding of a military commission judge, any more than the district courts are bound by the "factually baseless denial" of conscientious objector status to individuals, who claim the right not to be tried by a court-martial because they have been unlawfully classified as service-members. *Cf. Parisi v. Davidson*, 405 U.S. 34, 39 (1972). Petitioner has exhausted the only available legal review in the military commission system and shown it to be futile. And Respondents' rather peculiar objection seems to be that, having done so, Petitioner should now be barred from challenging his status as an "unprivileged enemy belligerent" because the military commission judge will require Respondents to demonstrate that Petitioner is properly subject to military jurisdiction after subjecting him to military jurisdiction for a full-blown capital trial.

the armed forces" overseas in the Uniform Code of Military Justice was held to be unconstitutionally overbroad in *Reid*, 354 U.S. at 33-35. Supp. Pet. 49.

Respondents do not deny that Petitioner's first two claims are limited to personal jurisdiction. Instead, Respondents ask this Court to ignore the Circuit's opinion, to start from scratch, and to fashion a new rule under which abstention is a blanket preclusion to all habeas review, irrespective of the nature of the claims asserted, unless the Petitioner can show that the catch-all "extraordinary circumstances" exception is also met. Resp. 31. But that is not what the Circuit held. Nor is that the holding of *Councilman*, the case upon which Respondents claim to most strenuously rely. *Councilman*, 420 U.S. at 759. Respondents claim that this approach is consistent with three other decisions of this Court. Resp. 32. But the cases cited all involved military commission defendants who had been captured in or near Afghanistan and were charged with crimes committed in the context of and associated with the hostilities there. And moreover, all of these cases were decided years before the Circuit had the opportunity to weigh in on when abstention is – and is not – appropriate in military commission cases.

The Circuit, for its part, has now ruled and it held that the extraordinary circumstances exception is just one of a "few narrow and limited circumstances" in which abstention must give way. *Al-Nashiri*, 835 F.3d at 128. While those other exceptions are "few" and "narrow," they do exist. And the extraordinary circumstances exception, for its part, is an ill-defined catch-all exception that the Supreme Court has recognized for situations in which irreparable harm will result but other established abstention exceptions – like personal jurisdiction – do not apply. *Kugler v. Helfand*, 421 U.S. 117, 123-124 (1975). In fact, before the Circuit, the major point of contention between the majority and Judge Tatel, in dissent, was over whether "*this* exception to abstention" applied due to the unique circumstances of Petitioner's case. *Al-Nashiri*, 835 F.3d at

128 (emphasis added); *id*. at 145 (Tatel, J., dissenting). This debate was separate and apart from the fact that the majority, the dissent, Petitioner, and Respondents all agreed that "abstention is inappropriate," irrespective of any other extraordinary circumstances, where "'there is a substantial question whether a military tribunal has personal jurisdiction over the defendant.'" *Al-Nashiri*, 835 F.3d at 133 (*quoting Hamdan*, 548 U.S. at 585 n.16).

Here, Petitioner has asserted two substantial questions respecting the military commissions' personal jurisdiction over him. Indeed, Petitioner's first ground is so substantial that military commission prosecutors asked the military commission judge to issue an advisory opinion on it, arguing that "[t]he question of whether the 2009 MCA violates equal protection is a foundational legal question that should, in the interest of judicial economy, be resolved early in the litigation." *United States v. Nashiri*, Government Motion for a Ruling that the Military Commissions Act of 2009 Does Not Violate Equal Protection, AE058, at 10 (Mar. 12, 2012) *available at* https://perma.cc/DTW7-XQVV. Petitioner agrees. The substantial legal questions respecting Respondents' dubious decision to remove him from the Southern District of New York to the military commissions in Guantanamo have been deferred long enough. He has carefully followed the Circuit's precedent in limiting the claims he has asserted. And this Court should follow the law, hear those claims, and grant relief if he is right on the merits.

### C.   Petitioner's third ground for relief should also be deemed to be excepted from the Circuit's abstention decision.

Finally, Petitioner acknowledges that his denial of counsel claim stands apart from his personal jurisdiction claims. While the Circuit and Respondents have (until now) expressly recognized personal jurisdiction as a basis for pretrial habeas review, Petitioner was candid in his supplemental petition that the Circuit left unresolved the extent to which abstention is appropriate for this kind of procedural claim. Supp. Pet. 57.

That said, the Circuit was clear that its decision was not intended to set forward a definitive list of abstention exceptions and that abstention would likely have not been appropriate had Petitioner "identified flaws in that system that would prevent him from fully litigating his defenses. Indeed, case law indicates that abstention is appropriate only where a plaintiff has 'a full and fair opportunity to litigate' his claims in the alternative forum." *In re Al-Nashiri*, 835 F.3d at 121 n.4. Hence, it endorsed the view that "abstention is inappropriate where state processes will not remedy the plaintiff's injury because they are inadequate either on their face or in practice." *Ibid.* (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1084 (10th Cir. 2015) (Gorsuch, J., concurring)).

As Petitioner explained in his supplemental petition, it is difficult to conceive of a "flaw in the system" that would hamper his ability to "fully litigat[e] his defenses" more completely than the wholesale denial of his statutory and constitutional right to qualified counsel in a capital case. The denial of qualified counsel prejudices Petitioner in every decision he makes. Supp. Pet. 54-55. It is one of the few recognized structural errors. *Id.* 58-59. And it is a category of error that offends core habeas principles, insofar as "the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Johnson v. Avery*, 393 U.S. 483, 485 (1969).

Respondents claim that habeas is inappropriate for this claim because the military commission judge is undertaking efforts "to address the situation." Resp. 34. But this assertion is a thin reed on which to ignore the denial of the right to counsel in a capital case. By way of analogy, the Supreme Court refused to abstain in a class action brought by California prisoners, who claimed that they were being denied adequate access to the courts. The Court held, in

relevant part, that the "mere possibility that a state court might declare the prison regulations unconstitutional is no ground for abstention." *Procunier v. Martinez*, 416 U.S. 396, 400-01 (1974) *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Besides, Col Spath has done nothing to fix the situation. Instead, he has announced his intention to proceed with all remaining critical stages of the pretrial and trial proceedings regardless of whether Petitioner is, in fact, represented. Perhaps Col Spath genuinely believes, as he has stated on the record, that Petitioner's former attorneys did not have good cause to withdraw or that the Chief Defense Counsel had no authority to excuse them. But if that was so, Col Spath's remedy was clear. Just as Col Spath did when he was denied the use of a private boat to travel onto base, Supp. Pet. 11, he could have temporarily abated proceedings. This would have afforded Respondents an opportunity to seek administrative remedies as well as a basis on which to take an interlocutory appeal to the Court of Military Commission Review (CMCR) to resolve the controversy definitively. 10 U.S.C. § 950f(a).

Respondents fault Petitioner for not taking this route himself. But Petitioner has no right to take an interlocutory appeal to the CMCR; only the prosecution does. While it is true that Petitioner could theoretically seek extraordinary relief via a writ of mandamus, that avenue is extraordinary and there is no good reason to believe that he will be able to litigate the merits of his claim given that it is an issue of first impression. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). "Neither [the Circuit] nor any other court of appeals has analyzed" the issue and that ordinarily precludes relief in this Circuit regardless of whether a petitioner's "argument packs substantial force" or raises "a serious issue." *In re Khadr*, 823 F.3d 92, 99-100 (D.C. Cir. 2016). Petitioner has come to this Court, therefore, because it is the only forum in which he can assert a right to relief on the merits.

As the Circuit recognized forty years ago, "[c]onditions of confinement that impede a defendant's preparation of his defense (apart, of course, from the fact of confinement itself), or that are so harsh or intolerable as to induce him to plead guilty, or that damage his appearance or mental alertness at trial, are constitutionally suspect and can be justified only by the most compelling necessity." *Campbell v. McGruder*, 580 F.2d 521, 532 (D.C. Cir. 1978). Accordingly, ordinary principles of "judicial restraint" cannot justify the denial of habeas relief when such a "fundamental constitutional guarantee" is at stake. *Id.* at 527. The military commission processes have proven themselves inadequate in practice to remedy this fundamental injury to Petitioner's constitutional and statutory rights. *In re Al-Nashiri*, 835 F.3d at 121 n.4. This Court should therefore not abstain from providing a remedy.

### III.   IN THE ALTERNATIVE, THIS COURT SHOULD HOLD THAT ABSTENTION IS NO LONGER APPROPRIATE DUE TO UNREASONABLE DELAY.

In addition to rejecting Respondents' abstention arguments on the ground that the claims Petitioner has asserted fall within the "few and narrow" exceptions that the Circuit has recognized, this Court should also consider rejecting Respondents' abstention argument on grounds of unreasonable delay. Petitioner has now been in U.S. custody for over fifteen years without judicial review. For four of those years, Respondents held Petitioner incommunicado in so-called "black-sites" in order to avoid judicial scrutiny while they subjected him to a meticulous program of "physical, psychological, and sexual torture." Supp. Pet. 2. Respondents have forestalled judicial review for the past nine years by subjecting Petitioner to the vicissitudes of an irregular military commission system, whose very jurisdiction over him continues to be in significant doubt.

As the Circuit made a point to acknowledge, there is precedent for the proposition that "an unreasonable delay in military-commission proceedings," which has the effect of postponing meaningful judicial review interminably, supports its own "exception to abstention." *Al-Nashiri*, 835 F.3d at 135 (*citing Nissan Motor Corp. in USA v. Harding*, 739 F.2d 1005, 1011 (5th Cir. 1984) (explaining that "excessive delay causing significant impairment of constitutional rights" can counsel against abstaining in favor of an ongoing state proceeding)). The Circuit therefore deliberately left open the possibility that "[s]hould an unreasonable delay materialize, [Petitioner] may pursue available remedies at that time." *Ibid*.

The Circuit issued this decision a year-and-a-half ago. In finding that Petitioner had not yet shown unreasonable delay, the Circuit stated that it was "troubled by the estimate of [Petitioner's] counsel that appellate review in this court might not occur until 2024." *Al-Nashiri*, 835 F.3d at 135. Nevertheless, the Circuit declined to rule on whether this constituted unreasonable delay because Petitioner "offered this prediction for the first time during rebuttal at oral argument, providing no information on the cause of this anticipated lag between trial and appeal to our court, and no opportunity for the government to respond." *Ibid*.

Back in 2016, Petitioner's estimate of 2024 was based on three uncontested factors: 1) the earliest a trial was then expected to begin was the summer of 2018; 2) the military commission judge estimated that this trial was likely to span nine months to a year, Trans. at 3626; and 3) in the two cases to reach the Circuit on post-trial review, *Hamdan* and *Al-Bahlul*, an average of fifty-three months elapsed between the imposition of sentence and the Circuit's initial disposition of their appeals. As can be seen in the table below, counsel's estimate of 2024 was based on a conservative extrapolation of these three undisputed factors.

|  | *Hamdan* | *Al-Bahlul* | **Average Duration** *rounded to the nearest month* | Al-Nashiri *estimated* |
|---|---|---|---|---|
| **Final Judgment & Sentence** | 8/7/2008 | 11/3/2008 | N/A | 8/2019 |
| **Rulings on Post-Trial Motions** | 10/29/2008 | N/A | 3 | 11/2019 |
| **Record Authentication** | 4/28/2009 | 3/13/2009 | 6 | 5/2020 |
| **Legal Advisor Recommendation** | 5/19/2009 | 4/10/2009 | 1 | 6/2020 |
| **R.M.C. 1105 Submission (i.e. clemency)** | 6/29/2009 | 5/20/2009 | 1 | 7/2020 |
| **Convening Authority Action** | 7/16/2009 | 6/3/2009 | 1 | 8/2020 |
| **CMCR Disposition** | 6/24/2011 | 9/10/2011 | 25 | 9/2022 |
| **Initial D.C. Circuit Disposition** | 10/6/2012 | 1/25/2013 | 16 | 12/2023 |

*Average duration of the military commissions' post-trial processes rounded to the nearest month and projected from the lower-bound estimates had Petitioner's trial begun in 2018.*

As the table shows, counsel's estimate of 2024 in February 2016 was based on the optimistic premise that trial was likely to begin in the summer of 2018 and that the post-trial process would last the 53-month average. Since that time, however, the prosecution still has not satisfied discovery obligations that have existed since 2011. Supp. Pet. 21. There was a significant turnover in Petitioner's military defense counsel last spring, which, combined with other logistical factors, meant that in July 2017, trial was still not expected to commence until 2020. *Id.* 22. And that 2020 estimate was made prior to the discovery in August of information

relating to the compromise of attorney-client confidentiality, which in turn compelled Petitioner's longtime civilian counsel to withdraw from the case. *Id*. 15-16.

Furthermore, the initial estimate of 2024 largely assumed away the uniquely complex aspects of Petitioner's case. The *Hamdan* and *Al-Bahlul* cases were non-capital and involved inchoate conspiracy, solicitation, and material support charges and no allegations of complicity in perpetrated crimes. Their records of trial spanned 4,182 pages in *Hamdan* and a mere 998 pages in *Al-Bahlul*. They involved a vanishingly small amount of evidence classified as Secret and involved none classified at the Top Secret/SCI level. And on post-trial appeal, both defendants challenged their convictions by raising a handful of pure questions of law.

Petitioner's case, by contrast, involves nine charges, four of which carry the death penalty. The facts span a dozen countries and implicate a vast amount of evidence that remains classified at the Top Secret/SCI level. By the time any trial in this case has concluded, hundreds of witnesses will have testified, over a thousand contested motions will have been made, and the final transcript of proceedings is likely to span tens-of-thousands of pages. And assuming the prosecution prevails in obtaining a death sentence, Petitioner's defense team will be ethically required to raise every legal, evidentiary, and sentencing issue at every opportunity in the post-trial process.

While the military commission system's novelty means that there are no guideposts for how long such a process could take, a comparison to courts-martial, which involve analogous phases of post-trial procedure, suggests that the Circuit is unlikely to decide Petitioner's case on post-trial appeal until the end of the next decade. For courts-martial in which death sentences have been imposed, an average of 8.3 years elapse between the imposition of the sentence and an initial decision being rendered by the Court of Appeals for the Armed Forces (CAAF), the

positional counterpart to the D.C. Circuit.[2] This does not include the time spent on subsequent proceedings, such as remands from the CAAF. It also does not account for the fact that Petitioner's case is substantially more complex, both legally and factually, than any case to have ever passed through the court-martial system.

It would be one thing if the anticipated post-trial delay was simply the cost of good faith checks-and-balances to ensure that, when this case did finally arrive at the Circuit, the basic soundness of any judgment and sentence was reasonably assured. But the past decade of experience has shown that the military commission process, at the trial as well as at the post-trial phase, is little more than the "appearance of law." *Boumediene*, 553 U.S. at 785. In both the *Hamdan* and *Al-Bahlul* cases, every phase of the post-trial process unanimously ratified Respondents' prosecutorial prerogatives on grounds that were unanimously rejected when the Circuit ultimately entertained review. *See, e.g.*, *Al Bahlul v. United States*, 767 F.3d 1 (D.C. Cir. 2014) (unanimously vacating two out of three of convictions on plain error review); *Hamdan v. United States*, 696 F.3d 1238 (D.C. Cir. 2012) (unanimously vacating the conviction of bin Laden's getaway driver). In fact, the single greatest contributor to post-trial delay has been the mandatory review in the CMCR, whose legal structure remains in doubt and which has yet to be squarely affirmed on a single contested question of law.[3]

---

[2] *United States v. Witt*, 75 M.J. 380 (CAAF 2016) (11 years); *United States v. Akbar*, 74 M.J. 364 (CAAF 2015) (10 years); *United States v. Quintanilla*, 63 M.J. 29 (CAAF 2006) (8 years); *United States v. Kreutzer*, 61 M.J. 293 (CAAF 2005) (9 years); *Walker v. United States*, 60 M.J. 354 (CAAF 2004) (consolidated cases entailing 9 and 11 years respectively); *United States v. Gray*, 51 M.J. 1 (CAAF 1999) (11 years); *United States v. Murphy*, 50 M.J. 4 (CAAF 1998) (10 years); *United States v. Simoy*, 50 M.J. 1 (CAAF 1998) (6 years); *United States v. Thomas*, 46 M.J. 311 (CAAF 1997) (9 years); *United States v. Loving*, 41 M.J. 213 (CAAF 1994) (5 years); *United States v. Curtis*, 32 M.J. 252 (CMA 1991) (4 years); *United States v. Dock*, 28 M.J. 117 (CMA 1989) (5 years)

[3] *In re Mohammed*, 866 F.3d 473 (D.C. Cir. 2017); *In re Khadr*, 823 F.3d 92 (D.C. Cir. 2016); *In re Al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015); *Al Bahlul v. United States*, 767 F.3d 1 (D.C. Cir.

Respondents favorably cite Judge Robertson's decision to abstain from hearing a habeas petition brought on the eve of trial in the *Hamdan* case in 2008. Resp. 26. But this Court should view Judge Robertson's opinion as a cautionary tale. Judge Robertson acknowledged that the petitioner had raised issues of "particular sensitivity." Indeed, the Circuit unanimously vacated the petitioner's conviction four years later on one of those very issues. *Hamdan*, 696 F.3d at 1253. But Judge Robertson assuaged his concerns by reminding Respondents that the "eyes of the world are on Guantanamo Bay. Justice must be done there, and must be seen to be done there, fairly and impartially." *Hamdan v. Gates*, 565 F.Supp.2d 130, 137 (D.D.C. 2008). While well intentioned, the decade since has shown that this hortatory admonishment did nothing to bolster the independence or rigor of the military commissions process. And one undoubtable reason is that the system's institutional actors can be confident that meaningful judicial review of their treatment of Petitioner will not occur until long after they have moved on with their careers.

In light of the extraordinary amount of time that has already elapsed, the dysfunctionality of the proceedings in Guantanamo described at length in Petitioner's supplemental petition, and the very real possibility that Petitioner's next chance for judicial review will not occur for another decade, Petitioner asks this Court to consider entering a finding that "an unreasonable delay" has materialized rendering continued abstention inappropriate.

---

2014) (en banc); *Hamdan v. United States*, 696 F.3d 1238 (D.C. Cir. 2012). Currently, the appointment of judges to the CMCR's under review by the Supreme Court in *United States v. Dalmazzi, et al.* 138 S.Ct. 53 (Mem) (2017) (granting cert.).

## CONCLUSION

For the foregoing reasons, Petitioner respectfully asks this Court to grant his petition for a writ of habeas corpus.

Respectfully submitted,

Dated: December 14, 2017

/s/      Michel Paradis
Michel Paradis (D.C. Bar #499690)
Kristina Hon
U.S. Department of Defense
Military Commission Defense Organization
1620 Defense Pentagon
Washington, DC 20301

Nancy Hollander
Freedman Boyd Hollander Goldberg
     Urias & Ward P.A.
20 First Plaza
Albuquerque, NM 87102

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on the December 14, 2017, I caused the foregoing to be served on Respondent's counsel by this Court's ECF software. This filing was submitted after consultation with the Court Security Officer pursuant to the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information, Case Nos. 08-MC-442-TFH (Dkt. Nos. 1481 and 1496) & 08-cv-01207-RJR (Dkt. Nos. 79 & 80) (D.D.C. 9 January 2009).

Dated: December 14, 2017           /s/      Michel Paradis
                                   Michel Paradis (D.C. Bar #499690)
                                   U.S. Department of Defense
                                   Military Commission Defense Organization
                                   1620 Defense Pentagon
                                   Washington, DC 20301

                                   Counsel for Petitioner