**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABD AL RAHIM HUSSEIN AL NASHIRI, | CIVIL ACTION (HABEAS CORPUS) |
| *Petitioner*, | |
| *v.* | No. 08-Civ-1207 (RCL) Misc. No. 08-mc-442 (TFH) |
| DONALD TRUMP, *et al*., | |
| *Respondents*. | *before* Judge Royce C. Lamberth |

**PETITIONER'S RESPONSE TO**

**RESPONDENTS' MOTION TO STAY PROCEEDINGS**

**ON PETITIONER'S MOTION FOR SUMAMRY JUDGMENT**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ii

Response ................................................................................................................................2

    I.     Judicial economy will be better served by keeping the standard briefing
    schedule in place. .......................................................................................................3

    II.    Suspending the briefing schedule will create delay ...................................................5

    III.   This Court cannot abstain in favor of military commission proceedings
    that are irregular and biased .......................................................................................7

Conclusion ..........................................................................................................................15

Certificate of Service ..........................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ............................................................................................................7

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ............................................................................................................8

*Gibson v. Berryhill*,
   411 U.S. 564 (1973) ............................................................................................................8

*In re Al-Nashiri*,
   835 F.3d 110 (D.C. Cir. 2016) ..................................................................................... 3, 7

*Kugler v. Helfant*,
   421 U.S. 117 (1975) ............................................................................................................8

*Liteky v. United States*,
   510 U.S. 540 (1994) ..........................................................................................................14

*Obaydullah v. Obama*,
   609 F.3d 444 (D.C. Cir. 2010) ..........................................................................................7

**Other Authorities**

Carol Rosenberg, *Military judge wants civilian attorneys arrested for quitting USS Cole case*,
   MIAMI HERALD (Feb. 13, 2018) ......................................................................................11

Harvey Rishikof, Convening Authority, Memorandum for BGen John G. Baker, Chief Defense
   Counsel (Nov. 21, 2017) ..................................................................................................10

## RESPONSE

Respondents ask this Court to stay the briefing schedule on Petitioner's motion for summary judgment. Dkt. 296-1, at 7. Petitioner has consented to Respondents' counsel having a reasonable extension of their deadline in which to respond to his motion for summary judgment. But Petitioner opposes the motion to stay for three independently sufficient reasons: (1) judicial economy will be better served if this Court decides all the issues presently before it together; (2) proceeding step-wise will cause more unnecessary delay; (3) and abstention, generally, is no longer justifiable because of now-proven bias in the military commission proceedings.

Petitioner does not oppose this Court's staying further proceedings on the third claim for relief set forth in his Supplemental Habeas Petition, specifically his request for stay of military commission proceedings until he is represented by capitally qualified counsel. On February 18, 2018, the presiding military commission judge, Col Vance Spath, USAF, abated trial proceedings until that issue is resolved, rendering Petitioner's requested relief moot. Counsel for the prosecution has stated that this abatement will result in an indefinite delay of military commission proceedings that is anticipated to last at least seven months.

This abatement is the third major suspension of proceedings against Petitioner over the past nine years. While this suspension of military commission proceedings relieves this Court of the need to reach Petitioner's third claim for relief, it also bolsters the case for this Court's resolution of the first two issues presented, which go to the military commissions' personal jurisdiction. As Col Spath noted just last Thursday, Petitioner's military commission proceedings have been riven with "uncertainty, doubt, and delay." Trans. 12356. The time to definitively resolve the basic legality of Respondents decision to try Petitioner in Guantanamo instead of the Southern District of New York is long overdue.

2

**I.   JUDICIAL ECONOMY WILL BE BETTER SERVED BY KEEPING THE STANDARD BRIEFING SCHEDULE IN PLACE.**

Respondents' primary arguments for their motion to stay the briefing schedule are "the interests of efficiency and judicial economy." Dkt. at 4. At the outset, it should be said that this appeal to judicial economy is, at best, opportunistic. It is Respondents, after all, who are asking this Court to abstain from deciding Petitioner's substantial challenges to the basic legality of his trial by military commission, when doing so will require all involved to undertake a full capital trial before any court decides whether that trial was lawful in the first place.

Judicial economy is better served if this Court decides Respondents' motion to dismiss and Petitioner's motion for summary judgment in the course of consolidated briefing and argument. Respondents' arguments for dismissal are legally weak. As Petitioner showed in his response to the motion to dismiss, Dkt. 290, and his memorandum in support of his motion for summary judgment, Dkt. 295-1, the two bases on which Respondents have sought dismissal are foreclosed by clear precedent. With respect to subject-matter jurisdiction, Respondents unsuccessfully made a near-identical argument to the Supreme Court in *Hamdan v. Rumsfeld* and it was rejected. Dkt. 295-1, at 13-14. And accepting this argument requires this Court to distinguish more than three centuries of adverse precedent. With respect to abstention, Respondents have consistently argued that pre-trial challenges to military commissions should be limited to personal jurisdiction. Dkt. 290, at 9-10. The Circuit accepted this argument and identified a general personal jurisdiction exception to the abstention doctrine it created. *In re Al-Nashiri*, 835 F.3d 110, 133 (D.C. Cir. 2016). The only debatable point with respect to abstention is Petitioner's denial of counsel claim, which for the reasons stated above, Petitioner no longer presses at this time. There is no reason to believe, therefore, that step-wise motion practice will

do anything other than burden this Court's docket with additional, and largely duplicative, pleadings and hearings.

Briefing on the merits of Petitioner's summary judgment motion is also made necessary by Respondents' arguments in favor of abstention. That is because, under Respondents' own theory, this Court must assess the substantiality of the merits to determine whether abstention is justified. Specifically, Respondents argue that a personal jurisdiction claims should only be exempt from abstention if they are "'substantial arguments' that the military had no right to try the petitioners at all, the substantiality of those arguments turning on the civilian status of the persons whom the military attempted to try and on the lack of congressional power to permit the military to do so." Dkt. 291, at 11. In other words, Respondents assert that the Circuit's personal jurisdiction exception must be limited to "substantial arguments," which it construes as a merits question regarding Petitioner's likelihood of success, *i.e.* whether Petitioner's arguments are "substantial enough" to warrant an exception to abstention. *Id*. at 12-15.

Petitioner disagrees with this narrow characterization of the Circuit's opinion. But even assuming it is correct, and the need to abstain turns on the "substantiality" of Petitioner's claims on the merits, Respondents motion to dismiss rises and falls on the strength of Petitioner's claims on the merits. For the reasons set forth in Petitioner's prior pleadings, those claims are "substantial." Either Congress exceeded its power when seeking to segregate the criminal justice system by making personal jurisdiction dependent upon citizenship status. Or Petitioner is a "civilian" entitled to a regular trial in a regular court because there is no evidence that he is a "belligerent" subject to the personal jurisdiction of a military commission. At a minimum, therefore, this Court needs to know whether Respondents can muster any law or facts to rebut these claims before it can decide whether Petitioner's arguments are "substantial."

## II. STAYING THE BRIEFING SCHEDULE WILL ONLY CREATE MORE NEEDLESS DELAY.

Respondents claim that granting their motion will not result in any prejudice. Dkt. 296-1 at 6. But granting Respondents' motion to stay the briefing schedule will necessarily add to the extensive delay that has already plagued the adjudication of this case. Petitioner has been in custody for the past fifteen years. His military commission case has been pending for more than nine years, during which proceedings have been repeatedly suspended. In 2009, Respondents halted proceedings for the ostensible purpose of reforming the military commission system. Supp. Pet. 8. In 2011, Respondents restarted Petitioner's case only to suspend it again in 2014, after the prosecution filed two interlocutory appeals on peripheral issues. Proceedings resumed in the summer of 2016 only to ground to a halt again last week over a basic question respecting the accused's counsel rights and lines of supervisory authority.

Col Spath's most recent abatement order is therefore the third time that Petitioner's military commission proceedings have been suspended for a protracted period of time. How long this current abatement will last is presently unknown. But based upon the prosecution's estimates, it is expected to span at least seven more months while Respondents seek to comply with Col Spath's order to recall CDR Brian Mizer, USN, to active duty to re-join Petitioner's trial defense team and serve as learned counsel.[1]

_____

[1] As noted in Petitioner's memorandum in support of his motion for summary judgment, Col Spath has sought to remedy the lack of learned counsel be ordering the recall of CDR Mizer to Petitioner's case. Dkt. 295-1, at 14 n.2. At a hearing on February 15, 2018, Col Spath vented his frustration that "I ordered Commander Mizer recalled to active duty months ago, and what I hear now is, oh, it might take seven-eight months. We need demonstrated real movement on recalling him or not doing it." Trans. 12353-54. The following day, Col Spath spoke discursively for approximately thirty-minutes on his frustrations with the process generally and, though he reiterated his view that "you don't get learned counsel if it's not practicable, and it's not practicable," he also recognized that the issue was debatable. Trans. 12376; *see also id*. 12283-84 ("if we have a single attorney representing Mr. al Nashiri in a complex trial … very few

As stated above, given the suspension of proceedings while the learned counsel issue is resolved, Petitioner does not oppose this Court's staying its hand on that issue. Petitioner is compelled to inform this Court, however, that Col Spath repeatedly expressed a desire to have guidance from a superior court on this issue, including from this Court.[1] *See*, *e.g.*, Trans 12351 ("What I know is we deserve and need some guidance from somebody. We have courts of higher review."). He referenced this Court's consideration of *Baker v. Spath*, stating, "I'm hoping that Judge Lamberth will rule on [the counsel] issue. I fear he's going to rule on … the contempt issue, and not help with the – kind of the underlying real question we all need answered – right? – Am I right or is General Baker right?" Trans. 12270. In addition, Col Spath has deferred to the pendency of a case in the Southern District of Indiana brought by Petitioner's former learned counsel, raising the question of BGen Baker's authority over defense counsel. *See*, *e.g.*, AE390A at 1 n.2 (Dec. 11, 2017).[3] The primary equitable consideration that normally compels abstention – avoiding interference with military commission proceedings – is not only absent but reversed in this case, insofar as Col Spath himself is pleading for this Courts' guidance. Petitioner leaves it to the discretion of this Court whether to address Petitioner's third claim for relief at this time.

---

appellate courts are going to be happy with the process."). Because the denial of counsel can result in reversal on appeal, he abated, stating that "the efficient administration of justice means we do this one time, not twice, if we can help it; and that everybody who has an interest doesn't travel down here for the next 25 years doing this. Because that is what we keep doing." *Ibid*.

[2] Specifically, Col Spath lamented that "[t]here are writs of mandamus for exceptional issues. I feel like we have some." Trans. 12351. For the reasons stated in Petitioner's previous pleadings, Col Spath appears to misapprehend the viability of mandamus review precisely because of the "exceptional" nature of the issues presented. Dkt. 290, at 16. Reflective of this fact, on February 21, 2018, the prosecution filed a notice of appeal of Col Spath's oral abatement order to the Court of Military Commission Review (CMCR), not a writ of mandamus. It is unclear, however, whether the CMCR will have jurisdiction over this appeal because that court's jurisdiction over interlocutory appeals is limited, *inter alia*, to an order that "terminates proceedings of the military commission with respect to a charge or specification." 10 U.S.C. § 950d(a)(1).

[3] *Available at* http://www.mc.mil/Portals/0/pdfs/alNashiri2/Al Nashiri II (AE390A).pdf

But staying further proceedings on the learned counsel claim does not warrant further delay in the adjudication of Petitioner's clearly viable personal jurisdiction claims. As Petitioner argued in his initial response to the motion to dismiss, the Circuit recognized that "an unreasonable delay in military-commission proceedings," which has the effect of postponing meaningful judicial review interminably, may support its own "exception to abstention." *Al-Nashiri*, 835 F.3d at 135. In fact, the Circuit has held that "the considerations of comity underlying *Councilman* are not implicated when no military commission proceeding is pending." *Obaydullah v. Obama*, 609 F.3d 444, 449 (D.C. Cir. 2010). And the Circuit squarely invited Petitioner to return to Court "[s]hould an unreasonable delay materialize[.]" *Al-Nashiri*, 835 F.3d at 135. That delay has now materialized now that proceedings have again been suspended.

All Petitioner asks is that the basic questions respecting Respondents' authority to remove him from a federal district court to a military commission be resolved. Respondents' motion to stay the briefing schedule promises to do nothing but create more unnecessary delay. And further delay "after the passage of time involved here and with no end in sight is insupportable in view of the Supreme Court's instruction that 'the costs of delay can no longer be borne by those who are held in custody'; they 'are entitled to a prompt habeas corpus hearing.'" *Obaydullah*, 609 F.3d at 449 (quoting *Boumediene v. Bush*, 553 U.S. 723, 794 (2008)).

### III. THIS COURT CANNOT ABSTAIN IN FAVOR OF MILITARY COMMISSION PROCEEDINGS THAT ARE IRREGULAR AND BIASED.

Finally, to the extent Respondents' motion to stay the briefing schedule turns on the strength of their underlying motion to dismiss, the military commission's course of conduct over the past four months shows that Respondents' abstention arguments have become untenable. Petitioner's equal protection argument challenges personal jurisdiction in a way that questions the military commissions' fidelity to equal justice under law. And his argument that he is a

civilian criminal suspect and not a "belligerent" subject to the personal jurisdiction of a military commission squarely asks whether the military commission itself is proceeding *ultra vires*. Abstention serves no purpose if the military commission' ability to dispassionately resolve such fundamental questions is compromised by the kind of strong personal investment in the proceedings that Col Spath and counsel for the prosecution have betrayed themselves to have.

As stated in Petitioner's previous filings, Col Spath and the counsel for the prosecution alike have increasingly resorted to *ad hominem* attacks against Petitioner's current and former attorneys. Dkt. 295-1, at 10-11. Col Spath, egged on by the prosecution, ordered the imprisonment of the Chief Defense Counsel over a dispute involving competing claims of supervisory authority over defense counsel. *See Baker v. Spath*, Case No. 17-cv-02311 (RCL). He did so after refusing to accept pleadings from the Chief Defense Counsel and stated, "I'm denying you the opportunity to be heard," in the face of the Chief Defense Counsel's challenging him on personal jurisdiction. Trans. 10054. And Col Spath has repeatedly voiced his personal "frustration" with an ill-defined group that he and the prosecution derisively call "the defense community." Dkt. 295-1, at 9-10; *see also* Trans. 11538.

Whatever the outer parameters of the general "extraordinary circumstances exception" to abstention doctrines, the settled core of such claims is where there is bias in the adjudicatory process. *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). That is because the basic predicate for abstention is absent when the tribunal whose actions are under review "was incompetent by reason of bias to adjudicate the issues pending before it." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *cf. Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965). While the commissions' past conduct supports a reasonable inference of bias, this last week leaves no room for doubt. Indeed, even Col Spath seems to have recognized as much.

At the outset of a hearing on Monday, February 12, 2018, Col Spath addressed the issue of a subpoena he issued for two of Petitioner's former counsel to appear. Represented by outside counsel, those attorneys moved to quash and Col Spath, from the bench, again refused to even accept to pleadings. He stated that the "docketing order I think was a fair indication that I'm not granting any motion to quash." Trans. 11536. Col Spath then continued, saying in "response to the docketing order, we received proposed third-party filings that, frankly, were a cut-and-paste from the original third-party filings with the very same arguments, so I'm not accepting those. I've already seen them. There's nothing new." *Ibid*.

While Petitioner takes no position on the propriety of his former counsel being subpoenaed in this fashion, he does feel compelled to note that counsel for the prosecution, immediately after this remark from Col Spath, stated "Sir, about these third-party filings, [Appellate Exhibit] 393, I understand that you're not going to accept them, but I do believe there is new information in there that should concern the commission." Trans. 11537. The prosecution then accused the Military Commissions Defense Organization (MCDO) of "professional mismanagement" over the wording of a administrative document from 2015, *id*. 11554, and of scheming "to create dysfunction in the commission by their conduct." *Id*. 11558.

Col Spath then engaged in an extended stream-of-consciousness colloquy with counsel for the prosecution that veered between the rudiments of his authority as a military commission judge, to Petitioner's former attorneys' employment in the federal government, to the efforts of Petitioner's lone trial attorney, LT Alaric Piette, USN, JAGC, to secure learned counsel.[4] Trans.

---

[4] At one point, Col Spath stated that "in a federal filing, the defense community told a federal judge, We can have learned counsel assigned to the case in 30 days. That's in a federal filing to a federal district judge. We're 120 days out. I wonder if they've gone back and amended the filing to let the judge know, well, when we said 30, we meant probably a year because that's since, of course, come to pass." Trans. 11556. Petitioner's counsel reviewed filings in this case. We do not

11538-70. Col Spath even mocked the ethical dilemma that forced Petitioner's former trial

attorneys to withdraw as "fake news." *Id*. 11558.[5]

Col Spath, for his part, was candid about how personally invested he had become in

Petitioner's case saying, "And in the spirit of full disclosure, there are days, right, where this is

tough work. And it would be a lot easier for me to say I'm going home, which is exactly, by the

way, what happened on this side, which is so frustrating: I'm going home." Trans. 11552. And

before turning to the taking of testimony, Col Spath again harangued LT Piette for refraining

from taking substantive positions in the absence of learned counsel:

> MJ [Col SPATH]: Again, I've ruled on that. And I've ruled -- first,
> there are jurisdictions that disagree with you, you know that.
>
> DDC [LT PIETTE]: Uh-huh.
>
> MJ [Col SPATH]: Flat out. There are jurisdictions that frankly do
> not buy into this ABA requirement -- a policy group -- this ABA
> requirement -- and it's not even a requirement, a guideline of
> capitally qualified counsel. There are jurisdictions who believe that
> is not helpful for a variety of reasons, many of them political,
> frankly, and you know that.

*Id*. 11568.

Addressing the refusal of Petitioner's former counsel to return to the case, Col Spath

initially stated that he was not going to issue "any rulings from the bench on this issue today,

---

believe that we made this representation. Furthermore, to the extent there is any cause for delay
in the appointment of learned counsel, it has come from Respondents. *See* Dkt. 295-1, at 9-10.

[5] The seriousness of the issue that led Petitioner's previous counsel to withdraw has been
extensively documented. *See, e.g.*, Dkt. 295-2 ¶¶ 34-40. Even the former Convening Authority
recognized the seriousness of the underlying issue and stated his intention "to recommend to the
Joint Detention Group that a 'clean' facility be designated or constructed which would provide
assurances and confidence that attorney-client meeting spaces are not subject to monitoring."
Harvey Rishikof, Convening Authority, Memorandum for BGen John G. Baker, Chief Defense
Counsel (Nov. 21, 2017) *available at* https://www.documentcloud.org/documents/4273591-
Convening-Authority-memo-for-Brig-Gen-John-Baker.html.

because I want to reflect, and reflect in the right state of mind." Trans. 11719. Later that same

afternoon, however, Col Spath announced, "I'm going to issue warrants of attachment [ordering

U.S. Marshalls to arrest Petitioner's former counsel] – I plan to do it tomorrow – to have them

brought sometime on Thursday or Friday." *Id*. 11910.

       This statement was covered widely in the press. *See*, *e.g.*, Carol Rosenberg, *Military*

*judge wants civilian attorneys arrested for quitting USS Cole case*, MIAMI HERALD (Feb. 13,

2018).⁶ The following day, however, Col Spath denied having ever made this remark and lashed

out at the media for its coverage:

> And yes, I use CAAFlog. I don't read the comments and I tend not
> to read the analysis; I don't need their help, because some people
> suggest it has a bias. … So I was a little surprised last night when I
> opened it to find this case making their – the top of the banner, and
> noticed very quickly that it said that I had ordered, or was going to
> order today, writs be issued against civilians to be dragged to
> GTMO. Imagine my surprise. Fortunately, there was a link to figure
> out where in the wide, wide world of sports is that coming from.
>
> And it's coming from a [Miami Herald] reporter who we brought
> down here and we bring down here willingly, and you know, put up,
> who got it wrong. I said very clearly yesterday I want draft writs so
> I have options as I figure out what to do, and I hadn't made a
> decision yet. I don't know if I could have been more clear.
>
>                        \*\*\*
>
> I have no control. But it's just always remarkable to me that words
> matter and accuracy matters when we are dealing with significant
> issues that affect people. … In that same article, again, talks about
> the secret court. I look out at all the people we bring. We haven't
> had a classified session in months.

Trans. 11924-25. In response to subsequent press reporting fact-checking this denial, Col Spath

returned to the issue again the next day stating, "I've had a chance to listen to audio, I actually

---

⁶ *Available at* http://www.miamiherald.com/news/nation-world/national/article199947919.html.

know what I said, which is, of course, what I think you all heard, 'if I issue the subpoenas,' but [the public] can't listen to audio because we don't put the audio out there." *Id*. 12286.

Col Spath has openly recognized that he may again be acting outside of his "lane" as a presiding judicial officer:

> But I've got to tell you I feel like I'm in the wilderness on the – fighting this particular issue because it's not my fight. I am attempting to do what I can, but really, what are you all doing to – what are you all doing to make sure the people who are doing this are held responsible? I can't do it, 'that's clear. And again, is it in my lane? How much is in my lane?

Trans. 11551-52. And he admitted that he was consciously trying to be careful about what he said on the record so as to not end up like "the military judge in a courts-martial, *Hassan*, [who took] on a battle that was not his, right, the beard issue, and ultimately [had] to recuse himself." *Ibid*. Yet the day after this remark, he demanded testimony from senior Pentagon officials about "the clear evidence of [defense] misconduct in all of these cases[.]" *Id*. 11911.[7]

Even Col Spath's abatement order was preceded by a thirty-minute invective. "Over the last five months – yes, my frustration with the defense has been apparent. I said it yesterday and I'll continue to say it. I believe it's demonstrated lawlessness on their side; they don't follow

---

[7] It is unclear to what Col Spath was referring when he said, "all these cases." Col Spath and the prosecution have endeavored to paint the current dysfunction in Petitioner's case as a consequence of MCDO's "mismanagement" or what Col Spath later described as its effort to foment a "revolution to the system." Trans. 12373. There are at least ten other active cases under the supervision of the MCDO that are in various stages of trial and post-trial proceedings. The Chief Defense Counsel has, in fact, refused to allow defense counsel withdraw, even with the consent of the accused, when he determined that no good cause had been shown. *See United States v. Mohammed, et al.*, AE380SS (Jun. 28, 2016). If there is some vast "defense community" conspiracy, there is no indication that it has affected any of these other cases, which are proceeding in the ordinary course. The simpler explanation, and the one supported by the record, is that the extraordinary dysfunction that is presently unique to Petitioner's military commission case is the result of conduct by Col Spath, counsel for the prosecution, and Respondents over the course of the past nine years. *See* Supp. Pet. 9-22.

orders" Trans. 12364-65. Instead of *bona fide* legal questions, in other words, Col Spath has

treated disputes over the lawfulness of his orders as personal attacks. "I'm not ordering the Third

Reich to engage in genocide," he complained. "This isn't My Lai, or My Lai." *Id*. 12369.

Col Spath's *ad hominems* extended not just to Petitioner's present and former counsel.

They were also directed at the Military Commission Defense Organization more broadly. "These

last few months," Col Spath stated, "I think we can all say, have demonstrated significant flaws

within the commission process, particularly within the defense organization, and it demonstrates

an organization intent on stopping the system, not working within the system that they signed up

to work within." *Id*. 12372. He even accused the Deputy Chief Defense counsel of wearing a

"contemptuous" uniform at a hearing earlier in the week, specifically the Army's Class "B"

uniform. *Id*. 12365-66. This was despite, or perhaps overlooking, the fact that the Deputy was

*required* to wear his Class B uniform in commission proceedings under the governing rules.[5]

Concluding the proceeding, Col Spath again reiterated how personally invested he had

become in the disputes over his authority within the military commission process. "I've got to

tell you," he admitted, "after 26 years of service, it's shaken me more than I would have

expected." Trans. 12373. He then ordered the abatement of proceedings off-the-cuff:

> We're done until a superior court tells me to keep going. It can be
> CMCR. It can be the Washington – or the District in D.C. They're
> all superior to me. But that's where we're at. We need action. We
> need somebody to look at this process. We need somebody to give
> us direction. I would suggest it sooner than later, but that's where
> we're at.

---

[5] *See* Chief Defense Counsel Policy Memorandum 5-15 Ch. 5, MCDO Uniform and Civilian
Attire Policy for Military Personnel §1(b) (18 May 2017) ("All other MCDO military members
[i.e. excluding military defense counsel], less investigators, who enter the courtroom during
hearings will wear the appropriate 'short sleeve' uniform for their service with all required
awards, badges, and accoutrements: the Army Class 'B' for Army personnel[.]).

***

We are in abatement. We're out. Thank you. We're in recess.

Trans. 12377.

Both Col Spath and counsel for the prosecution have evinced a personal hostility to Petitioner's counsel, a personal investment in the outcome of legal disputes arising in his case, and a "frustration" with the limitations of the military commission system, which have repeatedly overwhelmed their professional judgment. Col Spath's preoccupation with how he is portrayed in the media, in particular, raises profound concerns about his ability to avoid the influence of "extrajudicial sources." *Liteky v. United States*, 510 U.S. 540, 554-55 (1994). Neither the public nor this Court has any basis on which to conclude that these proceedings are disinterested, fair, or unbiased. Respondents' arguments for abstention under these circumstances, therefore, are unsupportable. And to the extent their motion to stay the briefing schedule turns on the weight of this argument, it should be rejected.

14

**CONCLUSION**

For the foregoing reasons, this Court should deny Respondents' motion to suspend the

briefing schedule on Petitioner's motion for summary judgment.


Respectfully submitted,

Dated: February 23, 2018                    /s/      Michel Paradis
                                            Michel Paradis (D.C. Bar #499690)
                                            Kristina Hon
                                            U.S. Department of Defense
                                            Military Commission Defense Organization
                                            1620 Defense Pentagon
                                            Washington, DC 20301

                                            Nancy Hollander
                                            Freedman Boyd Hollander Goldberg
                                                 Urias & Ward P.A.
                                            20 First Plaza
                                            Albuquerque, NM 87102

                                            *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on the February 23, 2018, I caused the foregoing to be served on Respondent's counsel via ECF after coordination with the Court Security Officer pursuant to the Amended Protective Order for Habeas Cases Involving Top Secret/Sensitive Compartmented Information and Procedures for Counsel Access to Detainees at the United States Naval Station in Guantanamo Bay, Cuba, in Habeas Cases Involving Top Secret/Sensitive Compartmented Information, Case Nos. 08-MC-442-TFH (Dkt. Nos. 1481 and 1496) & 08-cv-01207-RJR (Dkt. Nos. 79 & 80) (D.D.C. 9 January 2009).


Dated: February 23, 2018                    /s/      Michel Paradis
                                            Michel Paradis (D.C. Bar #499690)
                                            U.S. Department of Defense
                                            Military Commission Defense Organization
                                            1620 Defense Pentagon
                                            Washington, DC 20301

                                            *Counsel for Petitioner*