**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ABD AL RAHIM HUSSEIN AL NASHIRI, | ) | **CIVIL ACTION** |
| *Petitioner*, | ) | **(HABEAS CORPUS)** |
| *v.* | ) | No. 08-Civ-1207 (RCL)<br>Misc. No. 08-mc-442 (TFH) |
| DONALD TRUMP, *et al.*, | ) | *before* |
| *Respondents*. | ) | Judge Royce C. Lamberth |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PETITIONER'S MOTION**
**FOR A TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

## INTRODUCTION

Petitioner moves for an order temporarily restraining Respondents from beginning his trial by military commission until the commission has had a meaningful opportunity to determine whether he is competent to stand trial. He further asks the Court to set an expedited hearing on his claim that Respondents transport him to, and compel his attendance at, those proceedings under conditions that injure his health, and to order that his medical experts be given prompt access to him and to his current medical records. The military judge has found "reason to question the Accused's physical capacity to stand trial under normal trial hours and conditions," AE 709 (Ex. 18), and the commission has declined to adopt any of the accommodations recommended by the medical board it convened, AE 359ZZ (Ex. 21).

On Monday, October 19, 2026, a military commission at Guantanamo Bay is scheduled to assemble the panel that will determine whether to sentence Petitioner to the death penalty. But the commission is poised to do so without having held, or even scheduled, a hearing on whether Petitioner is competent to stand trial.

On September 16, the military judge accepted that the Defense's request for an inquiry into Petitioner's competence was made in good faith and that the expert findings supporting it were not frivolous. He therefore ordered an examination under Rule for Military Commissions (R.M.C.) 706. The Defense's expert, Dr. Terry Kupers, a board-certified psychiatrist who examined Petitioner in August, has concluded that Petitioner is not competent. *See* AE 724, Attach. B (Ex. 22). He diagnosed a traumatic brain injury (TBI) arising from torture in CIA custody, a severe neurocognitive disorder, complex post-traumatic stress disorder (PTSD), and major depression. *Id.* at ¶5. He concluded that Petitioner cannot understand the proceedings or assist his counsel. *Id.* at ¶11.

The military judge ordered a competency evaluation but left no time for a meaningful hearing on whether Petitioner is competent. He has three times declined to stay the proceedings pending the inquiry. The court-ordered examiner's report is due on Friday, October 16. The parties travel to Guantanamo Bay on Saturday. The military judge left open the possibility for a competency hearing on Monday morning, the same day that trial is still scheduled to begin. *See* AE 726C (Ex. 33).

Petitioner does not ask this Court to decide whether he is competent to stand trial. Petitioner does not ask the Court to weigh the experts' evidence, to review the examiner's report, or to revisit any finding the military judge has made about his condition. As to the trial, Petitioner asks the Court only to preserve the status quo, in which no trial has begun, until the commission has decided the question it has itself opened, on a developed record and after hearing both sides. That relief is warranted whichever way the decision goes, because the injury is "the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975).

Petitioner recognizes that federal courts ordinarily abstain from enjoining military commission proceedings. *In re Al-Nashiri*, 835 F.3d 110 (D.C. Cir. 2016) (*Al-Nashiri II*). But the equitable grounds for abstention yield when "extraordinary circumstances" threaten "great and immediate" injury and leave the commission "incapable of fairly and fully adjudicating the federal issues before it." *Id.* at 128 (quoting *Kugler v. Helfant*, 421 U.S. 117, 123–24 (1975)).

Two features of this case meet that standard. *First*, on the present schedule the commission cannot fairly and fully adjudicate Petitioner's competence before his capital trial begins. *Second*, the proceedings are being conducted in a way that injures Petitioner

independent of the denial of his trial rights before the commission. The military judge found reason to question Petitioner's physical capacity to stand trial under normal trial hours and conditions, ordered a medical board, and declined the accommodations the board recommended. The injury from those conditions would exist if Petitioner were found competent, and it would exist if he were acquitted.

The relief requested here follows the line Judge Sullivan drew when two military commission defendants brought questions about their fitness for trial to this Court. In *Bin al-Shibh v. Bush*, No. 06-cv-1725 (EGS) (D.D.C.), the court required the Government to notify him before commencing commission proceedings, Minute Order (Aug. 5, 2008), and ordered that a defense expert be permitted to evaluate the petitioner, Order (Jan. 16, 2009), ECF No. 85. In *Abdulrazzaq v. Trump*, No. 17-cv-1928 (EGS) (D.D.C. Sept. 26, 2019), ECF No. 160 (*Abdulrazzaq I*), while he declined to enjoin the commission where the petitioner asked the district court to decide his medical competence itself, the district court required regular reports on the petitioner's medical condition. Unlike the petitioners in those cases, Petitioner does not ask this Court to decide his competence or to delay the commission's own inquiry. His claims fall within the heartland of habeas jurisdiction and must be resolved promptly to prevent imminent and irreparable harm to his physical and mental health.

## BACKGROUND

Petitioner is charged before a military commission with capital offenses arising from the bombing of the U.S.S. *Cole* in October 2000 and two other alleged plots. *See Al-Nashiri II*, 835 F.3d at 113–14. He was arraigned on November 9, 2011, and the case has been in pretrial proceedings since. Trial, which begins with the assembly of the panel of members, is set for October 19, 2026. AE 708 (Ex. 1); AE 724C at 8 (Ex. 2).

## I. Petitioner was tortured in CIA custody and has PTSD for which the commission has found no evidence of treatment.

That Petitioner was tortured in United States custody is not in dispute. *See, e.g.*, AE 354T at 10 (Ex. 3) (the "fact that the Accused was subjected to EITs [enhanced interrogation techniques], including the water board and other highly abusive techniques, is not in dispute"). He has been held since 2002. From 2002 to 2006, in its Rendition, Detention, and Interrogation (RDI) program, the CIA subjected him to "physical coercion and abuse amounting to torture as well as living conditions which constituted cruel, inhuman, and degrading treatment." *United States v. Al-Nashiri*, 764 F. Supp. 3d 1127, 1135 (C.M.C.R. 2025) (quoting the military judge's findings). He "was essentially held in solitary confinement for the better part of four years" and was interrogated or debriefed between 145 and 200 times. *Id.* at 1135 n.7, 1137.

The commission has found that Petitioner has PTSD that is "likely related, at least in part, to the abuse he experienced in the RDI program," and that "[s]ignificant physical and psychological effects of torture can last for ten years or more." *Id.* at 1137. In 2023 it found "no evidence of [Mr. Al-Nashiri] having ever received any treatment specifically for PTSD." AE 467CCC at 26 (Ex. 4).

## II. The commission last examined Petitioner's capacity in 2013, and the Defense has since reported that his condition impairs his work with counsel.

In November 2012, the Prosecution moved for an inquiry into Petitioner's competence, while stating that it was "not aware of any specific facts that suggest the accused lacks the capacity to stand trial." AE 140 at 1, 3, 5 (Ex. 5). The military judge then presiding ordered a board of at least three members, made no findings of his own, provided a means to request more time, and stated that the case "only awaits the results of the mental capacity board before

trial may continue." AE 140F (Ex. 6). The board reported forty-nine days later. It diagnosed PTSD and major depressive disorder, but found that Petitioner was competent at that time. AE 140J (Ex. 7). Its forensic psychiatrist later agreed in testimony that such an evaluation is "a point-in-time assessment," and he said that "we can't predict what exactly would happen in the future." Tr. at 17600–01 (Ex. 8).

In January 2014 the Defense moved to abate the proceedings until Petitioner received adequate treatment. It told the commission that his untreated PTSD and depression had "limited the ability of the defense to communicate with Mr. Al-Nashiri" and that he "cannot meaningfully assist defense counsel with the preparation of this capital case." AE 205 at 1, 7 (Ex. 9). The motion sought treatment, not a finding of incapacity under R.M.C. 909, and the military judge then presiding treated it accordingly, as "one potentially concerning a condition of detention and, by extension, the Accused's ability to participate in the preparation of his own defense." AE 205I at 2 (Ex. 10); *see* AE 205 at 1. The Defense renewed the point in September 2014 and January 2015. AE 205BB at 3 (Ex. 11); AE 205EE at 2 (Ex. 12). Both requests were denied in March 2015. AE 205HH at 2 (Ex. 13); AE 205II at 2 (Ex. 14).

Dr. Sondra Crosby, a physician and the Defense's expert in the diagnosis and treatment of torture, has, as the military judge found, "intermittently observed and interacted with [the] Accused since approximately 2012." AE 724C at 2. In a declaration quoted in Judge Tatel's 2016 dissent in this case, she expressed "serious doubts" about his ability to "remain physically and mentally capable of handling the physical and emotional stress of the military trial process," and feared that, if forced to undergo trial, he "will eventually decompensate" with "permanently disabling effect[s] on his personality and his capacity to cooperate meaningfully with his attorneys." *Al-Nashiri II*, 835 F.3d at 143 (Tatel, J., dissenting)

(alteration in original). She testified in December 2021 that he "sleeps for a couple of hours at a time and he wakes up hypervigilant," which she called "really significant sleep disturbance." Tr. at 15833 (Ex. 15). In March 2025 she reported that his PTSD symptoms "continue to be triggered by the prison environment, conditions of confinement, and the military trial process," and that they impair his "ability to engage with his defense counsel and to fully participate in his defense." AE 610B, Attach. B (Ex. 16); AE 724D at 10 (Ex. 17). She reported that he "has not received torture rehabilitation or psychological treatment for his PTSD/complex PTSD." AE 610B, Attach. B. After argument in court on March 13, 2025, whose traumatic content she was concerned "could trigger an acute flare of chronic PTSD symptoms," Petitioner did not attend the next day and described symptoms consistent "with a flare of his PTSD symptoms." *Id.*

## III. In 2026 the military judge questioned Petitioner's physical capacity to stand trial, ordered a medical board, and declined the accommodations it recommended.

On May 12, 2026, the military judge on his own motion directed the Convening Authority to convene a board to inquire into Petitioner's physical capacity to attend and participate in his trial. AE 709. He acted to decide "how and when to set the time for each session of the Commission once the panel is assembled," and to inform a pending Defense request that Petitioner be housed at the courtroom complex during trial. *Id.* He noted that no medical officer had suggested that Petitioner lacks the physical capacity to stand trial, but he found that "the medical evidence in the record lacks temporal relevance." *Id.* He found "reason to question the Accused's physical capacity to stand trial under normal trial hours and conditions." *Id.* He found that Petitioner has been diagnosed with PTSD, that he has bouts of motion sickness and nausea during and after transport to the courtroom complex, and that he

"takes medications that may cause drowsiness or other symptoms affecting his ability to sit in court, focus, concentrate, and/or meaningfully participate in his defense." *Id.*

The board included no psychiatrist, clinical psychologist, or any forensic mental health professional and was not asked to assess mental capacity. AE 724C at 2–3; AE 724H at 9 (Ex. 19). It examined Petitioner for nearly two hours on July 29, 2026. The examination did not take place at the Expeditionary Legal Complex, where Petitioner attends court and meets counsel after being driven there. AE 724C at 2; AE 726 at 12 (Ex. 20). The board reported on August 21, 2026. Its report went to the military judge ex parte and remains under seal. AE 724C at 5, 7.

The board recommended three accommodations not currently available to him to facilitate Petitioner's participation at trial: "less frequent transportation," "travel without visual isolation," and "a mid-week break during trial." AE 359ZZ at 3-4. The Commission denied all three requests. *Id.* at 7. Notwithstanding his own board's recommendations, the military judge declined to adopt any of them, without input from the parties. *Id.*

**IV. A psychiatrist cleared by the Government examined Petitioner in August 2026 and concluded that he lacks capacity.**

In February 2025, the Defense asked the Convening Authority to appoint Dr. Terry Kupers, a board-certified psychiatrist, to evaluate Petitioner, and told the commission and the Prosecution that its psychiatrist and psychologist "will need security clearances to evaluate Mr. Al-Nashiri." AE 724 at 11–12; AE 604A at 24 (Ex. 23). Dr. Kupers's clearance was not fully adjudicated until March 2026, and he was not fully read into the necessary programs until August 2026, about eighteen months after the request. AE 724 at 11–12; AE 724D at 3 n.7.

Dr. Kupers traveled to Guantanamo Bay the day after his read-on was complete. AE 724 at 11–12; AE 724D at 3 n.7. In the order that set the trial date, the military judge found

that the Convening Authority's "dilatory processing caused the bulk of the relevant delay" and that such delay "must ultimately be borne by the Prosecution rather than the Accused." AE 708 at 8, 10. Dr. Kupers examined Petitioner on August 16 and 19, 2026, and observed him in court on August 17. AE 724, Attach. B.

Dr. Kupers diagnosed four conditions: 1) traumatic brain injury arising from torture and from prolonged anoxia during waterboarding; 2) neurocognitive disorder, severe and chronic; 3) complex PTSD, severe and chronic; and 4) major depressive disorder, severe and chronic. *Id.* He reported that "[t]he organic brain pathology noted in prior records from the R.M.C. 706 inquiry, as well as Mr. Al-Nashiri's disability, have significantly worsened since 2013, when he was last examined by an R.M.C. 706 board." *Id.* He found impairment in complex attention, learning and memory, executive function, and social cognition. *Id.* He reported that Petitioner "has a very difficult time participating in two-way conversations," that he himself "had great difficulty asking him questions to ascertain whether he understands the charges he is facing, possible verdicts and sentence, and court proceedings," and that Petitioner's long-standing memory complaints impair "his ability to follow the complex court proceedings or engage in meaningful conversations with his attorneys." *Id.* He concluded, to a reasonable degree of medical certainty, that Petitioner "lacks capacity to stand trial because he is unable to understand the nature of the proceedings or to conduct or cooperate intelligently in the defense of the case." *Id.* He offered that opinion "in support of the convening of a formal inquiry into Mr. Al-Nashiri's mental capacity, not as a substitute for such inquiry." *Id.* at 40.

Dr. Kupers also recorded the effect of transport on Petitioner. Each examination session followed transport, "which triggered his PTSD symptoms." *Id.* Petitioner "experiences

intrusive thoughts and dizziness when he is driven in a van to court or visitation with counsel, e.g., he again recalls the shaking boxes and stress positions." *Id.*

Petitioner's brain imaging is also incomplete. Clinical review of a 2017 MRI of his brain "disclosed several clinically significant findings, including mild bilateral hippocampal atrophy." AE 707K at 2 (Ex. 32) (quoting AE 707H at 6 (Ex. 31)). That scan and the two since, in 2025 and 2026, used the same limited protocol on a 1.5 Tesla machine: 5 mm slices with interslice gaps, yielding 23 to 25 images. *Id.* Neither a 3 Tesla MRI nor PET imaging can be performed at Guantanamo Bay. *Id.* at 3. On October 7, 2026, the military judge recognized that the Defense's psychiatric experts "have concluded that additional or more subtle evidence of brain injury may be present," and that such evidence "will certainly be a significant factor in a pre-sentencing hearing if one becomes necessary." *Id.* at 7–8. He ordered the Government to make all reasonable efforts to acquire software for diffusion tensor imaging (DTI), with the scan to follow within 30 days of acquiring it and a neuroradiologist's report within 30 days of the scan. *Id.* at 10–11. That imaging has not been performed.

**V. The military judge ordered an inquiry, stated his view of the evidence in the order sent to the examiner, and left the trial date in place.**

On September 4, 2026, three days after Dr. Kupers signed his declaration, the Defense moved for an inquiry under R.M.C. 706 and for a limited stay: "that no session be convened requiring Mr. Al-Nashiri's presence, or instruction to counsel; that no session be convened at which substantive matters are litigated; and that trial not commence." AE 724 at 1. It was the first time the Defense had asked for such an inquiry. *Id.* at 2. The military judge ordered expedited briefing and authorized no reply. AE 724A (Ex. 24). The Prosecution responded with a declaration from Dr. Michael Welner, a forensic psychiatrist it employs, who has not

examined Petitioner and who primarily disputed the methods by which Dr. Kupers reached his diagnoses. AE 724B, Attach. C (Ex. 25); AE 724C at 4.

On September 16 the military judge granted the competency inquiry, but denied the motion for a stay. AE 724C. He accepted that the request "is made in good faith" and concluded that "the Commission cannot find [Dr. Kupers's] concerns frivolous." *Id.* at 4–5. In the same order, which he directed be furnished to the board, AE 724C at 6–7, he found that the "weight of the evidence reflecting on the Accused's mental capacity, which spans a period of decades, indicates that he possesses the capacity to stand trial," described the evidence supporting Dr. Kupers's conclusions as "scant," and stated that the inquiry was ordered "out of an abundance of caution." *Id.* at 4–5. The order further made findings of fact that the Defense has challenged as incomplete or mistaken.

The order gave the R.M.C. 706 board (the "706 board") the sealed report of the judge's sua sponte medical board. It further asked the 706 board, among other questions, whether Petitioner's diagnosis differs from the one reached in 2013 and "[h]ow can the Commission reconcile the medical board report dated 21 August 2026 with the defense expert's opinion dated 1 September 2026?" *Id.* at 5–7. It further set the schedule in consecutive sentences: "Trial in this case begins on 19 October 2026. The board's findings shall be concluded and made available to the Parties not later than 16 October 2026." *Id.* at 8.

In denying the stay, the military judge wrote that "[t]here is no requirement in the statute, regulations, or case law that pre-trial proceedings be stayed while a sanity board is conducted," and that the commission "will proceed as scheduled with the expectation that the Accused will be present at each session unless he voluntarily waives his presence or is otherwise excused by order of the Commission." *Id.* at 4–5.

Two days later, the Convening Authority appointed a *single* examiner, attached the military judge's order to the appointing memorandum, and provided no means to request more time. AE 724F (Ex. 26). The examiner was given twenty-eight days from appointment to report. *Id.*

On September 21, the Defense advised the commission that it would seek reconsideration and moved orally to stay the proceedings until that motion was decided. The military judge denied the request the same day. AE 724E at 4 (Ex. 27). The Defense then moved in writing for reconsideration. AE 724D at 2, 6. On September 22, it moved separately for a hearing under R.M.C. 909 before assembly, with the board's full report, the materials underlying it, the examiner's testimony, and a reasonable time to respond. AE 726 at 1. The Prosecution answered that "the Commission is not required to hold a[n] [R.M.C.] 909 hearing under the current circumstances," that the request for one is "premature until the conclusion of the on-going R.M.C. 706 Inquiry," and that a stay would "unnecessarily jeopardize the Commission's 19 October 2026 trial date." AE 724E at 1, 14–15; AE 726A at 1–2, 11 (Ex. 28).

On October 1 the military judge denied reconsideration and affirmed the denial of a stay. AE 724H at 10. He wrote that although "it is possible that the Accused's condition suddenly worsened," "after considering all the facts and circumstances, the Commission ultimately concluded that was not the case." *Id.* at 8. He acknowledged that the members of the medical board "were neither qualified to, nor tasked with, assessing the Accused's mental capacity to stand trial," but found their examination to be "some evidence of his mental competency." *Id.* at 9. He stated that the Defense "has not been denied a hearing on the question of the Accused's mental capacity," because "[t]hat matter is still before the

Commission pending the results of the R.M.C. 706 board." *Id.* at 9–10. He set no hearing and left the trial date in place. *Id.* at 10.

During voir dire of the military judge on September 23, he agreed that a board "should reach its conclusions irrespective of the trial date," but declined to say whether the examiner had been told how to request more time. Tr. at 96–97 (Sept. 23, 2026) (Ex. 29).

**VI. The Government's positions in the commission and in the CMCR.**

On October 2, 2026, the day after reconsideration was denied, Petitioner petitioned the U.S. Court of Military Commission Review (CMCR) for a writ of mandamus and a limited stay. CMCR Petition (Ex. 35). The Government opposed, arguing among other things that the petition is unripe until the commission rules on the request for a hearing. CMCR Opp. at 26–28 (Ex. 36). In the commission, it had argued that the request for a hearing is premature until the board reports. AE 726A at 1–2, 11. Before the CMCR, it contended that commission could "convene an R.M.C. 909 Hearing on 19 October 2026—or even over the 17–18 October weekend—before seating the panel, if an R.M.C. 909 Hearing ever becomes necessary." CMCR Opp. at 56. On October 14, 2026, the CMCR summarily dismissed the Petition in a two-page order. *See* CMCR Order (Ex. 34).

**VII. This habeas case.**

Petitioner filed this action in 2008. ECF No. 1. In 2014 he moved to enjoin his trial on the ground that the offenses charged did not occur in the context of hostilities and so lay outside the commission's jurisdiction. Chief Judge Roberts held the case in abeyance and denied the injunction as moot. *Al-Nashiri v. Obama*, 76 F. Supp. 3d 218 (D.D.C. 2014) (ECF No. 251). A divided panel of the court of appeals affirmed. *Al-Nashiri II*, 835 F.3d 110. The case was reassigned to this Court in March 2016.

In November 2017, Petitioner sought a temporary restraining order and a preliminary injunction against proceedings held in the absence of learned counsel. ECF Nos. 278, 279. The Court denied the temporary restraining order from the bench, and Petitioner withdrew the motion for a preliminary injunction by consent. Minute Entry (Nov. 2, 2017); ECF Nos. 281, 282. The court of appeals later vacated every order entered on or after November 19, 2015, by the military judge who was then presiding, on grounds of judicial misconduct. *In re Al-Nashiri*, 921 F.3d 224, 241 (D.C. Cir. 2019) (*Al-Nashiri III*).

## LEGAL STANDARD

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The same standard applies to both temporary restraining orders and to preliminary injunctions." *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009). When the Government is the opposing party, the balance of equities and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A temporary restraining order serves the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (discussing ex parte orders). The status quo here is that no panel has been assembled and no trial has begun.

## ARGUMENT

### I. THE COURT HAS HABEAS JURISDICTION AND AUTHORITY TO PRESERVE THE STATUS QUO.

The habeas statute "extends, in its entirety, to Guantanamo." *Aamer v. Obama*, 742 F.3d 1023, 1030 (D.C. Cir. 2014). What remains of the jurisdictional bar in the Military Commissions Act of 2006 reaches only "any other action," that is, an action other than habeas, "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of a detainee. 28 U.S.C. § 2241(e)(2). The question is therefore whether Petitioner's claims sound in habeas. *Aamer*, 742 F.3d at 1030. They do. Petitioner challenges Respondents' authority to bring him to trial before his competence to stand trial has been meaningfully adjudicated, and the conditions under which Respondents transport him to and compel his attendance at those proceedings.

A challenge to the Government's authority to put a prisoner on trial before a military commission is a long-established use of the writ. *Ex parte Quirin*, 317 U.S. 1, 25 (1942); *Hamdan v. Rumsfeld*, 548 U.S. 557, 567, 584–90 (2006); *cf. Al-Nashiri II*, 835 F.3d at 117 n.1 (declining to decide the Government's contention that Petitioner's 2014 challenge did not sound in habeas). Habeas also reaches the conditions of a Guantanamo prisoner's confinement. *Aamer*, 742 F.3d at 1032. A trial objection does not become a conditions claim because counsel raises it in a habeas motion. But Petitioner challenges *the manner* in which Respondents exercise physical custody over him during transport and attendance, and the resulting injury to his health. *Al-Nashiri II*, 835 F.3d at 130–31.

Even if the Court regards the jurisdictional question as close, it may preserve the status quo while it decides it. "If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction." *Belbacha v. Bush*, 520 F.3d 452, 455–56 (D.C. Cir. 2008) (citing *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947)). Section 2241(e)(2) "does not displace" that authority. *Id.* at 456. Petitioner must still satisfy the standard

for preliminary relief, *Kiyemba v. Obama*, 561 F.3d 509, 513 (D.C. Cir. 2009), and does not ask to be relieved of it. The order sought would bind the Respondents responsible for his custody and prosecution. Petitioner does not ask the Court to enjoin the President.

## II. PETITIONER IS LIKELY TO SUCCEED ON TWO CLAIMS THAT DO NOT REQUIRE THIS COURT TO DETERMINE HIS COMPETENCE.

### A. The military commission has denied Petitioner a meaningful opportunity to be heard on his competence before trial.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 420 U.S. at 171. The Government's own rule says the same: "No person may be brought to trial by military commission if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against him or her or to conduct or cooperate intelligently in the defense of the case." R.M.C. 909(a). The Secretary of Defense prescribed that rule under 10 U.S.C. § 949a(a), and the Government is bound by the rules it adopts. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954).

That protection has a procedural component independent of whether the accused is in fact incompetent. "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U.S. at 172. In *Pate v. Robinson*, the Supreme Court granted relief because the trial court had held no adequate hearing, without deciding whether the defendant had been competent. 383 U.S. 375, 385–87 (1966). In this circuit, "[i]f circumstances generating a substantial doubt as to the accused's competence come to the attention of the court, a suitable

hearing must be held." *United States v. Caldwell*, 543 F.2d 1333, 1348 n.61 (D.C. Cir. 1974). The hearing need not be lengthy, but "as a minimum . . . the inquiry must be of record and both parties must be given the opportunity to examine all witnesses who testify or report on the accused's competence." *Hansford v. United States*, 365 F.2d 920, 923 n.8 (D.C. Cir. 1966); *accord Caldwell*, 543 F.2d at 1348.

The record warrants that inquiry here. An examining psychiatrist has given the opinion, to a reasonable degree of medical certainty, that Petitioner lacks the mental capacity to understand the proceedings that will determine whether he is sentenced to death, or to assist meaningfully in his defense. The military judge ordered an examination after accepting that the Defense's request "is made in good faith" and concluding that "the Commission cannot find [Dr. Kupers's] concerns frivolous." AE 724C at 4–5 (Ex. 2). A prior medical opinion on competence is among the factors that may, standing alone, require further inquiry. *Drope*, 420 U.S. at 180. Petitioner relies on that evidence and the record supporting it, not merely on the commission's characterization of his request.

That a 706 board was ordered does not satisfy the requirements of the rule or due process. Capacity to stand trial is for the military judge to decide, *see* R.M.C. 909(e), and a 706 board is an "administrative board" whose findings "do not bind the court-martial in its determination of either competence . . . or mental responsibility." *United States v. Best*, 61 M.J. 376, 382 (C.A.A.F. 2005). Its findings "provide information for the final decision maker." *United States v. McGuire*, 63 M.J. 678, 680–81 (A. Ct. Crim. App. 2006). When the defense requests an inquiry on a good-faith, non-frivolous claim of incapacity, the military judge "cannot rule finally on that issue pursuant to R.C.M. 909 without first considering the report of a sanity board conducted in

accordance with R.C.M. 706 or an equivalent forensic mental evaluation." *United States v. Collins*, 41 M.J. 610, 612 (A. Ct. Crim. App. 1994).

If the 706 board finds that Petitioner lacks capacity, R.M.C. 909(d) expressly requires a hearing. If it finds he has the capacity to stand trial, its opinion will conflict with that of the psychiatrist who examined Petitioner for the Defense. Although the rule does not make a hearing automatic in that circumstance, the substantial contrary evidence here requires a meaningful opportunity to test the 706 board's evaluation before the commission resolves the dispute. *See Pate*, 383 U.S. at 385–87; *Caldwell*, 543 F.2d at 1348. Even a prisoner already convicted and sentenced is entitled to that much: once the threshold showing is made, due process requires, "at a minimum, that a court allow a prisoner's counsel the opportunity to make an adequate response to evidence solicited by the state court." *Panetti v. Quarterman*, 551 U.S. 930, 952 (2007) (competency to be executed); *see Ford v. Wainwright*, 477 U.S. 399, 424, 427 (1986) (Powell, J., concurring in part and concurring in the judgment) (same).

The circumstances of this examination make the Defense's opportunity for a meaningful hearing especially important. R.M.C. 706(c)(2) requires the referral to state the reasons for doubting capacity or otherwise requesting the examination. Here, the referral also told the examiner that the "weight of the evidence . . . indicates that [Petitioner] possesses the capacity to stand trial" and that support for Dr. Kupers's opinion is "scant." AE 724C at 4–5. Its factual premises included that counsel had never expressed concerns about communication and that Dr. Crosby had never expressed concern about capacity. *Id.* at 2–4. Yet counsel had reported that Petitioner's untreated conditions limited communication, and Dr. Crosby had reported that his symptoms impaired his ability to engage with counsel and participate in his defense. AE 205 at 1, 7 (Ex. 9); AE 610B, Attach. B (Ex. 16). In denying reconsideration, the military judge

narrowed his finding about Dr. Crosby to concerns expressed "to the Commission" about "his mental capacity to stand trial," AE 724H at 3 (Ex. 19), but he adopted the findings of the referral order and left it in place, *id.* at 2, 10, and that uncorrected order is the one the examiner received, AE 724F (Ex. 26).

The referral also furnished the examiner the physical medical board's sealed report, relied on Petitioner's perfect score on a basic cognitive test, and asked how that report could be reconciled with Dr. Kupers's opinion. AE 724C at 2–3, 5–7. The cognitive test was a three-minute dementia screen whose publisher describes it as "not a diagnostic assessment." AE 724D at 20–21 & Attach. C (Ex. 17). The military judge has since acknowledged that the medical board's members "were neither qualified to, nor tasked with, assessing the Accused's mental capacity to stand trial." AE 724H at 9. The referral's reliance on that score, and its question asking how the medical board's report could be reconciled with Dr. Kupers's opinion, remain in the order under which the examiner is working. Petitioner does not ask this Court to review that order or direct that an untainted competency evaluation be conducted. But these defects heighten the need for Petitioner's counsel to have time to examine the basis for the examiner's report.

Having ordered the inquiry, the military judge left no time for a meaningful hearing on its results. He ordered the examiner's report to be submitted "not later than 16 October 2026," a Friday. AE 724C at 8. The parties travel to Guantanamo on Saturday. The panel is to be assembled on Monday. Though the military judge left open the possibility of a hearing on Monday morning, *see* AE 726C (Ex. 33), before the panel is assembled, one business day is not enough time to obtain and read the report, assess the examiner's methods and sources, consult its cleared experts, identify any further testing or rebuttal, question the examiner, and present contrary evidence, with one of those days spent in transit to Guantanamo Bay. And the examiner

will report without the brain imaging the military judge ordered on October 7, 2026. AE 707K at 10–11 (Ex. 32). The military judge would then have to hear the matter and make findings.

The military judge's stated reasons for refusing to delay assembly were that no rule requires a stay while a board works and that the evidence did not "warrant a stay." AE 724C at 4–5. Neither explains why the report must be due on the last business day before assembly, or why assembly cannot await a hearing. When the commission last ordered such an inquiry at the behest of the Prosecution, it required a board of at least three members, provided a means to request more time, and stated that the case "only awaits the results of the mental capacity board before trial may continue." AE 140F (Ex. 6). The Defense moved three days after its expert signed his declaration, following a clearance process that took about eighteen months. An "unreasonable and arbitrary insistence upon expeditiousness in the face of justifiable request for delay" is an abuse of discretion. *United States v. Weisbeck*, 50 M.J. 461, 466 (C.A.A.F. 1999) (quoting *United States v. Soldevila-Lopez*, 17 F.3d 480, 487 (1st Cir. 1994)). *Soldevila-Lopez* applied that principle where the district court refused a brief continuance to let the defense respond to a court-appointed examiner's new and unexpected finding, delivered moments before the competency hearing. 17 F.3d at 488–90.

**B. Compelled transport and attendance expose Petitioner to independently actionable medical harm.**

The conditions under which Respondents transport Petitioner and compel his attendance present a separate claim, on which Petitioner at this stage seeks an expedited hearing and access for his medical experts. Its resolution does not depend on whether he is competent to stand trial. Rather, it asserts "deliberate indifference to serious medical needs" in the manner in which Respondents transport Petitioner and hold him during the proceedings. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An official is liable under that standard "only if he knows that inmates

face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Petitioner has not been convicted and remains presumed innocent. The due process rights of a person in that position "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

Judge Sullivan applied the deliberate-indifference standard to a military commission defendant's medical-care claim in *Abdulrazzaq v. Trump*, 422 F. Supp. 3d 281, 286 (D.D.C. 2019) (*Abdulrazzaq II*). He did not abstain from that claim, there being "no dispute as to whether this claim is properly before the Court." *Id.* He instead ruled on the merits, dismissing it for failure to state a claim because the petitioner's own allegations showed that "his condition has been evaluated, monitored, and treated throughout his detention." *Id*. at 288. Here, by contrast, the commission found in 2023 "no evidence of [Mr. Al-Nashiri] having ever received any treatment specifically for PTSD," AE 467CCC at 26 (Ex. 4), and the military judge has declined the accommodations his own medical board recommended, AE 359ZZ (Ex. 21).

The military judge himself found "reason to question the Accused's physical capacity to stand trial under normal trial hours and conditions." AE 709 (Ex. 18). He found that Petitioner suffers motion sickness and nausea during and after transport and that his medications may affect his ability to sit in court, concentrate, and participate in his defense. *Id*. His reconsideration ruling describes post-traumatic vertigo as a symptom frequently suffered after head trauma. AE 724H at 5 n.4. Dr. Kupers reported that transport brings on "intrusive thoughts and dizziness," during which Petitioner "again recalls the shaking boxes and stress positions." AE 724, Attach. B (Ex. 22). Dr. Crosby reported that after traumatic material was argued in court in March 2025,

Petitioner did not attend the next day and described symptoms consistent "with a flare of his PTSD symptoms." AE 610B, Attach. B.

Respondents have been given repeated notice of these injuries. In December 2025, Petitioner wrote on a waiver form, "I'm tired and dizzy because of the van and the very long court sessions," and counsel objected to the commission's finding that his absence was voluntary. AE 724D at 11–12. The medical board convened by the military judge recommended three accommodations to facilitate participation: less frequent transportation to and from court, travel without visual isolation, and a mid-week break during trial. AE 359ZZ at 3-4. The military judge declined to adopt any of them. AE 359ZZ. And in denying a stay pending the R.M.C. 706 inquiry, he stated that the commission "will proceed as scheduled with the expectation that the Accused will be present at each session unless he voluntarily waives his presence or is otherwise excused by order of the Commission." AE 724C at 5.

Unless excused, Petitioner must therefore attend under conditions that aggravate his documented injuries or waive his presence at his own capital trial, while the commission is still inquiring whether he has the capacity to make that choice. *See Drope*, 420 U.S. at 182–83 (where competence was in doubt, "there was an insufficient inquiry to afford a basis for deciding the issue of waiver" of the right to be present); *cf. Pate*, 383 U.S. at 384 ("it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial"). The risk will recur with each required transport and session. The claim is not that distress invariably accompanies prosecution. It is that Respondents know how particular conditions of custody injure Petitioner, and that the accommodations recommended by the medical board the military judge convened have not been adopted. A finding of competence would not resolve that claim or make those injuries lawful.

## III. ABSTENTION DOES NOT REQUIRE THE COURT TO PERMIT THESE INJURIES BEFORE THE COMMISSION CAN ADDRESS THEM.

*Councilman* requires abstention when the accused can show no harm other than that attendant to resolution of his case in the military system. *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975). *Al-Nashiri II* extended that rule to military commissions, but recognized intervention remained available and appropriate where extraordinary circumstances threaten great and immediate injury and render the alternative tribunal incapable of fairly and fully adjudicating the federal issues. 835 F.3d at 118, 121–28 (citing *Kugler*, 421 U.S. at 123–24). Petitioner invokes that exception because the existing schedule denies a meaningful opportunity to resolve his procedural claim before trial. He separately presents the treatment-in-custody claim that *Al-Nashiri II* expressly left open. Neither ground calls on this Court to decide his competence or to interfere with judgments lawfully committed to the military commission system. It simply asks this Court to ensure the law is faithfully applied.

### A. The present schedule denies a timely and meaningful opportunity to litigate the procedural claim.

*Al-Nashiri II* concerned a challenge to the commission's subject-matter jurisdiction, an issue that could be decided by the commission and reviewed on appeal. 835 F.3d at 125; *see also Al-Baluchi v. Esper*, 392 F. Supp. 3d 46, 57 n.8 (D.D.C. 2019) (the claim under review in *Al-Nashiri II* did not rest on the unfairness of Petitioner's particular commission). Petitioner did not then contend that the system's procedures would prevent him from fully litigating that defense. *Al-Nashiri II*, 835 F.3d at 130. The court of appeals recognized that abstention presupposes a full and fair opportunity to litigate in the alternative forum, and that it would be inappropriate if flaws in that process prevented one. *Id*. at 121 n.4.

Here, the schedule the military judge has set leaves the commission unable to adjudicate Petitioner's competence fully and fairly before his capital trial begins. Abstention "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). An alternative process may be inadequate in practice even if its procedures are sufficient on their face. *Al-Nashiri II*, 835 F.3d at 121 n.4. The report deadline, the travel day, and the assembly date leave no meaningful interval for the Defense to test the report and for the commission to resolve the dispute.

Petitioner has sought relief within the commission system. He requested a limited stay on September 4, moved orally on September 21 for a stay pending reconsideration, and sought reconsideration. Each request was denied. His September 22 motion for a hearing before assembly remains undecided. He petitioned the CMCR the day after reconsideration was denied, and the CMCR denied the petition and a stay on October 14, 2026, because the R.M.C. 706 evaluation was still pending. *See* CMCR Order at 2 (Ex. 34).

In the CMCR, the Government acknowledged that the commission "can always delay the trial, as necessary." CMCR Opp. at 5, 43 (Ex. 36). It can. But the Defense has repeatedly requested that relief, the military judge has declined it, and the Government opposed a stay because it would "unnecessarily jeopardize the Commission's 19 October 2026 trial date." AE 724E at 15 (Ex. 27). The possibility of a last-minute continuance does not supply the time the present orders withhold. Nor does the Government's suggestion that a hearing could be held on October 19 or over the preceding weekend. CMCR Opp. at 56. A hearing convened within a day or two of the report's delivery, with a day of travel in between, is not the opportunity to examine the witnesses and answer the report that *Hansford* and *Panetti* describe. Nor does the prospect of

seeking review after a ruling immediately before assembly protect a meaningful opportunity for pretrial adjudication. And if, as the Government says, the commission can always delay the trial, the order sought costs the Government nothing, because by its terms it dissolves once the commission continues assembly until Petitioner's capacity is decided.

The injury is immediate because the required protection must precede trial. R.M.C. 909(a) prohibits bringing an incompetent accused to trial, and *Pate* and *Drope* require procedures adequate to protect against that result. While merely describing a right as a "right not to be tried" does not itself establish an exception to abstention, *see Al-Nashiri II*, 835 F.3d at 131, the particular failure of process here, together with the serious and independently irreparable medical injuries discussed below, warrants equitable relief.

**B. The medical claim concerns preventable injury in custody that a later appeal cannot undo.**

*Al-Nashiri II* rejected an exception based on psychological harms that did not implicate the fairness of the military-commission proceedings. 835 F.3d at 129–30. But the court expressly added that, to the extent Petitioner challenged his treatment in custody, nothing in its opinion foreclosed a habeas challenge to those conditions. *Id*. at 130–31. Petitioner now presents that claim: the documented injuries from transport and compelled attendance, the notice to Respondents, and the commission's refusal to adopt the accommodations its medical board recommended.

Those injuries are distinct from prejudice to his defense at trial and do not turn on whether he is or is not legally competent to stand trial. Vertigo, the flashbacks of being tortured, disrupted sleep, and flares of PTSD symptoms injure Petitioner whether he can understand the proceedings or not, and whether he is convicted or acquitted. The challenged conditions are not made necessary by the fact of prosecution. The medical board's recommendations identify

measures directed to the conditions under which he participates. Their rejection, and the requirement of repeated attendance under the resulting conditions, supply the connection between Respondents' conduct and the injury for which relief is sought.

An appeal from a final judgment cannot undo that injury. *Sell v. United States*, 539 U.S. 166, 176–77 (2003) (pretrial order authorizing involuntary medication was immediately appealable as a collateral order because "[b]y the time of trial Sell will have undergone forced medication—the very harm that he seeks to avoid," and "[h]e cannot undo that harm even if he is acquitted"). Although *Sell* concerned appellate jurisdiction rather than equitable abstention, its reasoning applies by analogy to the treatment-in-custody reservation in *Al-Nashiri II*: review of a final conviction cannot repair injuries to a prisoner inflicted during the proceedings.

**C. The requested relief preserves the commission's decision-making role.**

Petitioner does not ask this Court to substitute its own competency determination for that of the military commission. *See Bin Lep v. Biden*, No. 20-cv-3344 (JDB), 2022 U.S. Dist. LEXIS 7012, at *55 (D.D.C. Jan. 13, 2022) (mental competency issues "should be litigated before the military tribunal"). The requested relief seeks only to preserve the commission's capacity to make a meaningful competency determination before Petitioner's trial. In this respect, Petitioner seeks only the limited relief granted in *Abdulrazzaq*, where the district court declined to conduct its own competence determination, but nevertheless required biweekly reports on the petitioner's medical condition and on any use of forced cell extraction. Minute Orders (Oct. 13 and 20, 2017); *Abdulrazzaq II*, 422 F. Supp. 3d at 289–90.

That relief does not open the "really wide open door" that concerned this Court in 2017. Tr. of Nov. 2, 2017 Hr'g at 5, ECF No. 289. It rests on an examining psychiatrist's opinion of incapacity, the commission's own decision to order an inquiry, a schedule that leaves no

meaningful opportunity to litigate the report before a capital trial, repeated refusals to adjust that schedule, and documented medical injuries for which reasonable accommodations recommended by the commission's own medical board have not been adopted. Once the commission resolves Petitioner's competence after a meaningful opportunity to test the evidence, the requested order would expire by its own terms. And on his treatment-in-custody claim, Petitioner asks at this stage only for an expedited hearing and access for his medical experts.

**D. Post-trial review is not an adequate safeguard for these two rights on this record.**

*Al-Nashiri II* expressly left open whether unreasonable delay in military-commission proceedings could justify an exception to abstention. 835 F.3d at 135. It cited authority recognizing that "excessive delay causing significant impairment of constitutional rights" can counsel against abstention. *Id.* (quoting *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1011 (5th Cir. 1984)). The court of appeals declined to apply that principle on the record then before it because Petitioner had not opposed, and had himself sought, the postponement at issue, and while "troubled" by the prospect, the court of appeals determined that counsel's unexplained estimate that appellate review might not occur until 2024 gave it no basis to forecast that such a delay would occur. But it expressly reserved the question: "Should an unreasonable delay materialize, Al-Nashiri may pursue available remedies at that time." *Id.*

Petitioner does not contend that the passage of time alone displaces abstention, and he recognizes that the relief he seeks would itself postpone trial. But abstention is an equitable doctrine that rests on the premise that review after final judgment is an adequate safeguard. Ten years after *Al-Nashiri II*, and two years past the 2024 date whose prospect left the majority "troubled," 835 F.3d at 135, trial has still not begun. The pretrial transcript alone exceeds 35,000 pages. Tr. at 35140 (Apr. 28, 2026) (Ex. 37). Petitioner is sixty-one, Tr. at 28 (Aug. 21, 2026)

(Ex. 30), and his examining psychiatrist reports organic brain pathology that has significantly worsened since 2013. AE 724, Attach. B. The military commission judge has ordered further brain imaging, which has not been performed. AE 707K at 10–11. On this record, review after a capital trial, and after the appeals that follow it, cannot be presumed an adequate safeguard for two rights that must be protected before or during trial to be protected at all: an adequate determination of capacity before trial, and protection against avoidable medical injury during the proceedings.

Petitioner has sought to continue trial to preserve his constitutional, statutory, and regulatory rights to only stand trial if competent to do so. Requiring Petitioner to await a final judgment would leave the identified medical injuries unremedied while they worsen and the adequacy of the competency inquiry unresolved until after the trial it was supposed to precede. The time has long past for when the troubling delay observed in *Al-Nashiri II* has become so obvious and extreme that the need for further abstention by the federal courts on questions of fundamental fairness and urgency remains equitable.

## IV. PETITIONER WILL SUFFER IRREPARABLE HARM WITHOUT RELIEF.

The injury "must be both certain and great; it must be actual and not theoretical," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)), and it must be "beyond remediation," *id.*

In 2017 the Court asked how an error at trial could be irreparable if it "would result in the setting aside of the conviction." Tr. of Nov. 2, 2017 Hr'g at 4–5. Here, setting aside Petitioner's conviction will not remedy the harms he faces today and will face in the years to come. A defendant tried without qualified counsel can be given counsel and tried again. A

defendant tried without a timely determination of his competence cannot reliably be given that determination afterward. *See Drope*, 420 U.S. at 183 (noting "the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances"); *Pate*, 383 U.S. at 387. "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Riggins v. Nevada*, 504 U.S. 127, 139–40 (1992) (Kennedy, J., concurring in the judgment)). Every decision a capital defendant must make would be made by a man whose capacity to stand trial at all remains in doubt.

The harm is certain enough to warrant relief now. Whether the commission will rule correctly on Petitioner's competence is uncertain. Whether it can rule after adequate process between a report due on Friday and a trial on Monday is not.

The effect of the proceedings on Petitioner's health in custody is a second and independent source of harm. "[W]here the health of a legally incompetent or vulnerable person is at stake, irreparable harm can be established." *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005). Dr. Kupers reports that transport brings on "intrusive thoughts and dizziness," and that the organic brain pathology noted in 2013 and Petitioner's disability "have significantly worsened since 2013." AE 724, Attach. B. The commission's own medical board recommended accommodations, which the military judge then declined to adopt. Reversal of a conviction cannot undo physical and psychological injury, and an opportunity to relitigate competence years from now cannot remedy it. If the Court requires more evidence of the

severity or preventability of that injury, it should preserve the status quo and set an expedited evidentiary hearing.

Petitioner has not delayed in seeking relief. The Defense moved for an inquiry *three days* after its expert signed his declaration and sought reconsideration within days, and Petitioner petitioned the CMCR the day after reconsideration was denied. He came to this Court only after the commission had three times declined a stay, and after the CMCR denied his petition with assembly days away.

## V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR RELIEF.

The order sought costs the Government only time, and how much depends on the commission. Petitioner is not seeking to avoid trial. And his proposed order leaves his detention, the charges, and the Government's preparation of its case where they are. As to the trial, all the order does is postpone its commencement until the parties have had a reasonable opportunity to litigate, and the commission to decide, whether Petitioner is competent to stand trial in the first place.

The Defense told the commission in 2014 and 2015 that Petitioner's untreated PTSD was impairing his work with counsel, and it sought treatment. It had no psychiatric opinion that he lacks capacity until September 1, 2026, because no defense psychiatrist could examine him until the Government cleared one. The Government then dithered for *eighteen months* in clearing that psychiatrist for access to Petitioner. The military judge found that the Convening Authority's "dilatory processing caused the bulk of the relevant delay" and that such delay "must ultimately be borne by the Prosecution rather than the Accused." AE 708 at 8, 10 (Ex. 1). The Defense moved three days after it had the opinion, and the military judge accepted that the request was made in good faith. AE 724C at 5.

Against the cost of delay stands a capital trial of a man whom the commission has found to suffer from PTSD "likely related, at least in part, to the abuse he experienced in the RDI program," *United States v. Al-Nashiri*, 764 F. Supp. 3d at 1137, and whom an examining psychiatrist has diagnosed with a traumatic brain injury arising from his torture and a severe neurocognitive disorder, AE 724, Attach. B. When the court of appeals granted Petitioner relief in 2019, on a petition for mandamus concerning the disqualification of the military judge, it wrote: "[S]urely the public's interest in efficient justice is no greater than its interest in impartial justice. Any institution that wields the government's power to deny life and liberty must do so fairly, as the public's ultimate objective is not in securing a conviction but in achieving a just outcome." *Al-Nashiri III*, 921 F.3d at 240. Although the Government warned that the writ would require relitigation of commission proceedings, "thus costing additional time and resources," the court was "confident that the costs of granting the writ are not intolerably high" because the case "remains at the pre-trial stage." *Id.*

This case still remains at the pre-trial stage and the delay that relief here would cause is the time the commission needs to meaningfully consider and decide the question, which should be measured in weeks, not years. The victims of the U.S.S. *Cole* attack have waited twenty-six years for a trial. Their interest, like the public's, is in a verdict that will stand, and a trial begun before the commission has decided whether the accused is competent would produce a verdict open to challenge from its first day.

## CONCLUSION

The Court should enter a temporary restraining order and, after a hearing, a preliminary injunction restraining Respondents from assembling the members or otherwise commencing trial on the merits in *United States v. Al-Nashiri* until the military commission has ruled on

Petitioner's capacity to stand trial under R.M.C. 909, on the record, after the Defense has received the full report of the R.M.C. 706 board and has had a reasonable opportunity to respond to it, including the opportunity to question the examiner and to present evidence.

The order should state that it does not decide, and expresses no view on, whether Petitioner is competent to stand trial. It should not restrain the commission from completing its inquiry, hearing the parties, or ruling on pending motions. It should bind the Respondents responsible for Petitioner's custody and prosecution and those within Federal Rule of Civil Procedure 65(d)(2). It should provide that it dissolves if the commission, the CMCR, or the court of appeals stays or continues the assembly of the members until Petitioner's capacity has been decided, and that Respondents may move at any time to modify it.

Whatever the Court decides respecting the trial, it should set an expedited hearing on Petitioner's claim concerning the conditions under which he is being transported to and held at the commission proceedings. It should also order that the Defense's medical experts be given prompt access to Petitioner and to his current medical records under the protective order.

To the extent the order of December 29, 2014, holding this case in abeyance (ECF No. 251) remains in effect and applies to the relief requested here, the Court should lift it for the limited purpose of deciding this motion.

Respectfully submitted,

//S//

Allison Ferber Miller
D.C. Bar No. 90031937
Law Office of Allison Ferber Miller
5906 Ramsgate Rd.
Bethesda, MD 20816
(321) 945-7615
allisonferbermiller@gmail.com

**EXHIBITS**

| | |
|---|---|
| Ex. 1 | AE 708, Order setting the October 19, 2026 trial date |
| Ex. 2 | AE 724C, Ruling ordering an R.M.C. 706 inquiry and denying a stay (Sept. 16, 2026) |
| Ex. 3 | AE 354T, AE 354, Defense Motion to Abate Proceedings Due to Destruction of Evidence: Videotapes of Mr. Al-Nashiri's Interrogations (Sept. 19, 2022) |
| Ex. 4 | AE 467CCC, Ruling on the Defense motion to suppress, AE 467 (2023) |
| Ex. 5 | AE 140, Prosecution motion for an R.M.C. 706 inquiry (Nov. 15, 2012) |
| Ex. 6 | AE 140F, Order directing an R.M.C. 706 inquiry (Feb. 7, 2013) |
| Ex. 7 | AE 140J, Findings of the R.M.C. 706 board (Mar. 28, 2013) |
| Ex. 8 | Tr. at 17600–01, Commission transcript, testimony of Dr. David Johnson (July 28, 2022) |
| Ex. 9 | AE 205, Defense motion to abate the proceedings (Jan. 17, 2014) |
| Ex. 10 | AE 205I, Order directing testimony on AE 205 (Mar. 11, 2014) |
| Ex. 11 | AE 205BB, Defense motion to reargue AE 205 (Sept. 16, 2014) |
| Ex. 12 | AE 205EE, Defense motion for leave to supplement the record (Jan. 16, 2015) |
| Ex. 13 | AE 205HH, Ruling (Mar. 9, 2015) |
| Ex. 14 | AE 205II, Ruling (Mar. 9, 2015) |
| Ex. 15 | Tr. at 15833, Commission transcript, testimony of Dr. Sondra Crosby (Dec. 2021) |
| Ex. 16 | AE 610B, Attach. B, Declaration of Dr. Sondra Crosby (Mar. 17, 2025) |
| Ex. 17 | AE 724D, Defense motion for reconsideration of the stay denial (Sept. 21, 2026), with Attach. C |
| Ex. 18 | AE 709, Order directing a physical evaluation board (May 12, 2026) |
| Ex. 19 | AE 724H, Ruling denying reconsideration (Oct. 1, 2026) |
| Ex. 20 | AE 726, Defense motion for an R.M.C. 909 hearing (Sept. 22, 2026) |
| Ex. 21 | AE 359ZZ, Ruling declining the accommodations recommended by the medical board (Sept. 3, 2026) |
| Ex. 22 | AE 724, Defense motion for an R.M.C. 706 inquiry and a limited stay (Sept. 4, 2026), with Attach. B, Declaration of Dr. Terry Kupers (Sept. 1, 2026) |
| Ex. 23 | AE 604A, Transition Plan of Learned Counsel (Feb. 26, 2025) |
| Ex. 24 | AE 724A, Order setting expedited briefing on AE 724 (Sept. 9, 2026) |
| Ex. 25 | AE 724B, Attach. C, Declaration of Dr. Michael Welner, attached to the Prosecution's response to AE 724 (filed Sept. 14, 2026) |
| Ex. 26 | AE 724F, Notice of board appointment (Sept. 22, 2026), with the Convening Authority's appointing memorandum (Sept. 18, 2026) |

| | |
|---|---|
| Ex. 27 | AE 724E, Prosecution response to the Defense motion for reconsideration (Sept. 22, 2026) |
| Ex. 28 | AE 726A, Prosecution response to AE 726 (Oct. 6, 2026) |
| Ex. 29 | Tr. at 96–97 (Sept. 23, 2026), Commission transcript |
| Ex. 30 | Tr. at 28 (Aug. 21, 2026), Commission transcript |
| Ex. 31 | AE 707H, Renewed Defense Motion to Compel Neuroimaging (Aug. 31, 2026) |
| Ex. 32 | AE 707K, Ruling and Order on AE 707H (Oct. 7, 2026) |
| Ex. 33 | AE 726C, Interim Order (Oct. 14, 2026) |
| Ex. 34 | Order, In re Al-Nashiri, CMCR Case No. 26-003 (Oct. 14, 2026) |
| Ex. 35 | Petition for Writ of Mandamus and Petition for a Limited Stay of Proceedings, In re Al-Nashiri, CMCR Case No. 26-003 (Oct. 2, 2026) |
| Ex. 36 | Respondent's Opposition to Petition for Writ of Mandamus and Petition for a Limited Stay of Proceedings, In re Al-Nashiri, CMCR Case No. 26-003 (Oct. 6, 2026) |
| Ex. 37 | Tr. at 35140 (Apr. 28, 2026), Commission transcript |

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2026, I caused the foregoing to be served on Respondents' counsel via this Court's ECF software.

Dated: October 15, 2026

//S//
Allison Ferber Miller
D.C. Bar No. 90031937
Law Office of Allison Ferber Miller
5906 Ramsgate Rd.
Bethesda, MD 20816
(321) 945-7615
allisonferbermiller@gmail.com

*Counsel for Petitioner*